In the Matter of EMANUEL S. et al., Respondents, v JOSEPH E. et al., Appellants.

Second Department, September 17, 1990

**APPEARANCES OF COUNSEL**

*Reisman, Peirez, Reisman & Calica (Seymour J. Reisman* and *Myra P. Lapidus* of counsel), for appellants.

*Alfred Reinarz, Law Guardian,* for child.

## OPINION OF THE COURT

HARWOOD, J.

This appeal requires that we determine whether grandparents are legislatively authorized to seek judicial intervention as an aid in efforts to visit a grandchild, notwithstanding the objection of both of the child's natural parents, neither of whom has abdicated or forfeited parental responsibility. We conclude that they are not, and rule that the Family Court, Nassau County, should have granted the parents' motion to dismiss the visitation proceeding, without reaching the issue of whether the best interests of the child warranted a visitation order.

The petitioning grandparents are the adoptive parents of the respondent Michelle E., who, in 1984, married the respondent Joseph E., apparently without objection from the petitioners. In 1986, Michelle E. gave birth to Max, the only child she and Joseph now have. Upon Max's birth, the relationship between Michelle and her mother began to deteriorate, apparently because Michelle's status as an adoptive child suddenly became a difficulty and because the petitioning grandparents, particularly Michelle's mother, developed animosity toward Joseph and toward the child's paternal grandmother. The petitioning grandparents saw and visited with Max during the first three months of his life, but Michelle and Joseph thereafter prevented the grandparents from having contact with him. In August 1987, when Max was approximately one year old, the petitioning grandparents made application before the Nassau County Family Court (see, Domestic Relations Law § 72; Family Ct Act § 651 et seq.) for an award of visitation.

In support of their application, the petitioning grandparents alleged that a visitation order would be in Max's best interests because they "love their grandchild and are being emotionally deprived by not being allowed to visit with their grandson" and because "they believe their relationship with their grandson would be beneficial to the child". The respondent parents immediately moved to dismiss the petition on the ground that the statutory authorization for grandparent visitation (Domestic Relations Law § 72) was an unconstitutional intrusion upon the nuclear family. The motion to dismiss was decided orally, and was denied. Subsequent applications by the parents to dismiss the proceeding, attacking both the constitutionality of

State intrusion and the petitioning grandparents' right to seek it, were similarly unsuccessful. Following lengthy hearings conducted over the course of several months, during which time the petitioning grandparents enjoyed court-ordered visitation with Max, the Nassau County Family Court ruled that the alleged animosity of the grandparents on which the respondent parents premised their opposition to visitation did not warrant its denial and that the other grounds advanced by them for denial of visitation were "superficial and controllable". It found that visitation would be in Max's best interests, but nonetheless reduced the amount of visitation previously ordered so as to "relieve the anxiety and concerns" of the respondent parents, whom the court described as "picayune" about details of visitation. However, the court also noted that there were "no allegations of any sort * * * to the effect that [they] are inadequate or abusing parents". We now reverse.

Although it is judicially recognized that visits with grandparents " 'are often a precious part of a child's experience and there are benefits which devolve upon the grandchild * * * which he cannot derive from any other relationship' " *(Matter of Ehrlich v Ressner,* 55 AD2d 953), grandparents enjoy no common-law or constitutional right to visit with their grandchildren *(cf., Lo Presti v Lo Presti,* 40 NY2d 522, 526-527; *see, Matter of Noll v Noll,* 277 App Div 286). Moreover, the respondent parents continue to maintain on appeal that Domestic Relations Law § 72, the statutory authority for an award of grandparent visitation *(see, Matter of Peter L.,* 59 NY2d 513) constitutes, if applied to an intact, functioning family, an unconstitutional invasion of the parents' Federally protected right of privacy concerning the manner in which they choose to raise their children *(see, e.g., Carey v Population Servs. Intl.,* 431 US 678; *Roe v Wade,* 410 US 113; *see also, Matter of Peter L., supra; but cf., People ex rel. Sibley v Sheppard,* 54 NY2d 320). Assuming we could pass on this issue *(but see,* CPLR 1012; *Jefferds v Ellis,* 122 AD2d 595; *Matter of Tiffany B.,* 111 AD2d 168, *lv denied* 65 NY2d 606, *cert denied sub nom. Blake v Nassau County Dept. of Social Servs.,* 474 US 862; *cf., People ex rel. Sibley v Sheppard, supra),* we would decline to do so *(see, Paterson v University of State of N. Y.,* 14 NY2d 432, 438; *Matter of Roosevelt Raceway v Monaghan,* 9 NY2d 293, 303, *appeal dismissed* 368 US 12)* because, although Domestic Relations Law § 72 provides a procedural mechanism by which grandparents may seek an award of visitation *(see, Lo Presti v Lo Presti, supra; Matter of Johansen v Lan-*

*phear,* 95 AD2d 973), we conclude that the Legislature never intended to allow judicial scrutiny of a parental value judgment in the circumstances—or lack thereof—extant here.

When originally enacted, Domestic Relations Law § 72 authorized applications for grandparent visitation only where the grandparents' own offspring was deceased (L 1966, ch 631); i.e., the right was derivative and arose because the deceased offspring was no longer alive to determine whether his or her parents should have contact with the grandchild (*cf., Matter of Frances E. v Peter E.,* 125 Misc 2d 164). In 1975, the statute was amended to provide that an application for grandparental visitation could be brought not only where one or both of the grandchild's parents were deceased but also "where circumstances show that conditions exist which equity would see fit to intervene" (L 1966, ch 631, as amended by L 1975, ch 431). Moreover, the requirement that it be a grandparent's own child who is deceased was deleted (L 1966, ch 631, as amended by L 1975, ch 431).

Memoranda accompanying the amendment to Domestic Relations Law § 72 indicate a legislative recognition that "[i]n the context of today's society with a high divorce rate, many disinterested parents do not concern themselves with the welfare of a child who is in the custody of the other parent" (letter from sponsor, Senator Giuffreda, to Counsel for Governor, June 19, 1975), that visitation with grandchildren in the custody of one parent can become a tool for manipulation "in situations of marital conflict between the parents of the grandchildren" (mem of State Bd of Social Welfare, June 23, 1975, Bill Jacket, L 1975, ch 431), and that it "is important to the children to continue contact with their family especially where the parents have separated or been divorced" (mem of State Bd of Social Welfare, June 23, 1975, Bill Jacket, L 1975, ch 431). The memorandum, submitted by the sponsoring senator, states that: "One of the areas of increasing concern is the welfare of children. Cases of child abuse and child neglect are all too familiar. This bill seeks to enable the court to intervene in certain situations to provide visitation rights for grandparents in respect to their grandchild if the situation warrants it. There appears to be a variety of potential situations where the utilization of such a resource could be of invaluable consequence to the children and ultimately the society" (1975 NY Legis Ann, at 51).

It is beyond dispute that a proceeding for an order directing grandparental visitation may be commenced against "any

* * * person" (Domestic Relations Law § 72) having care, custody or control of a grandchild, even when that person has by adoption acquired "many of the same rights as natural parents" *(People ex rel. Sibley v Sheppard, supra,* at 327; *see also, Matter of Layton v Foster,* 61 NY2d 747). It is also clear from the memoranda accompanying the legislation *(see,* McKinney's Cons Laws of NY, Book 1, Statutes §§ 124, 125 [b]) that by enacting the 1975 amendment to Domestic Relations Law § 72, the Legislature intended to extend the right to seek, but not necessarily to obtain *(see, e.g., Lo Presti v Lo Presti,* 40 NY2d 522, *supra,* at 526; *cf., Matter of Jessica R.,* 163 AD2d — [2d Dept, July 19, 1990]), visitation with a grandchild to grandparents beyond those who have had the misfortune of being predeceased by a child of their own. Had the Legislature intended to extend the right to seek judicial intervention to "any grandparent", it could have easily so specified. Since it did not do so, and since we presume that the phrase: "or where circumstances show that conditions exist which equity would see fit to intervene" (L 1966, ch 631, as amended by L 1975, ch 431), was intended to have some meaning *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 231), we conclude that a petition for an order authorizing visitation pursuant to Domestic Relations Law § 72 must demonstrate the existence of some circumstance or condition, such as untoward disruption of an established grandparent-grandchild relationship because of, e.g., a change in the status of the nuclear family, or interference with a "derivative" right, or some abdication of parental responsibility, before judicial examination of the best interests of the child with its attendant trauma, increased animosity, and financial drain is to be undertaken.

Whether Domestic Relations Law § 72 impermissibly authorizes interference in certain families simply because they are headed by single or troubled parents *(cf., Matter of Frances E. v Peter E.,* 125 Misc 2d 164, *supra,* at 167), which is perhaps "a problem inherent in the legislative policy itself" *(Matter of Layton v Foster, supra,* at 750), is a question not now before us. But we are aware of no binding authority for the proposition that the State may interfere in family life to the extent sought here *(but cf., Matter of Apker v Malchak,* 112 AD2d 518).

Although the dispute among the parties before us creates sad consequences for all concerned and although we sympathize with the commendable desire of these grandparents to

continue to maintain contact with their grandchild, we conclude that petitioners' status as grandparents and the love and affection springing from that status are an insufficient premise for the judicial scrutiny sought and undertaken here. We therefore reverse the order insofar as appealed from and dismiss the proceeding.

KUNZEMAN, J. P., BALLETTA and O'BRIEN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, and the proceeding is dismissed.