OPINION OF THE COURT
Simons, J.
The narrow issue presented is whether section 72 of the Domestic Relations Law may be applied to grant standing to grandparents seeking visitation with a grandchild when the nuclear family is intact and the parents object to visitation.
The question arises on the petition of Emanuel S., the grandfather of Max, an infant born to respondents in 1986. Petitioner is the adoptive father of Max’s mother.[1] He and his wife visited with Max during the first three months of his life but were thereafter prevented from any contact with him when their relationship with respondents deteriorated. They instituted this proceeding approximately one year after Max’s birth. Following lengthy hearings and an award of interim visitation to the grandparents, Family Court allowed them visitation for six hours on the second Sunday of every month. The court made extensive factual findings and concluded that (1) the animosity between the parents and grandparents was not a sufficient reason to deny the visitation, (2) the same criteria used in grandparent visitation cases for nonintact families should be applied to intact families, and (3) visitation by the grandparents was in Max’s best interests. The Appellate Division reversed, holding that Domestic Relations Law § 72 precludes grandparents from seeking visitation where the child’s natural parents object and neither of the parents have "forfeited parental responsibility.” (161 AD2d 83, 84.) The grandfather and the Law Guardian appeal by our leave.
At common law, grandparents had no standing to assert rights of visitation against a custodial parent: a petition seeking such relief would necessarily have been dismissed (see, Lo Presti v Lo Presti, 40 NY2d 522, 526-527; Matter of Noll v Noll, 277 App Div 286; Matter of Geri v Fanto, 79 Misc 2d 947, 949). In 1966 the Legislature enacted section 72 of the Domestic Relations Law and for the first time granted grandparents *181 standing to seek visitation rights. Not all grandparents were within the statute, however. As originally enacted, visitation was available only when the grandparents’ child had died. Grandparents had no independent standing to maintain the proceeding; their rights were derived entirely from the deceased parent.
In 1975, the statute was amended to allow standing not only where a parent had died, but also "where circumstances show that conditions exist which equity would see fit to intervene.”[2] The amendment also removed the clause limiting standing to grandparents whose child had died. Thus, a petition for grand-parental visitation may now be entertained in two situations. Where either parent of the grandchild has died, the grandparents have an absolute right to standing. In all other circumstances, grandparents will have standing only if they can establish circumstances in which equity would see fit to intervene. The amended statute, as several courts have recognized, rests on the humanitarian concern that " '[v]isits with a grandparent are often a precious part of a child’s experience and there are benefits which devolve upon the grandchild * * * which he cannot derive from any other relationship’ ” (Matter of Ehrlich v Ressner, 55 AD2d 953, quoting Mimkon v Ford, 66 NJ 426, 437, 332 A2d 199, 204; see, Matter of Vacula v Blume, 53 AD2d 633).
When grandparents seek visitation under either provision the court is faced with two questions. First, it must find standing based on death or equitable circumstances which permit the court to entertain the petition. If it concludes that the grandparents have established the right to be heard, then it must determine if visitation is in the best interest of the grandchild. In this case Max’s parents are alive and, therefore, petitioner seeks standing under the equitable circumstances clause of section 72 of the Domestic Relations Law.
We have never defined the "circumstances” or "conditions” *182 under which "equity would see fit to intervene” to allow standing. The Appellate Division interpreted the statute narrowly, concluding that the clause permitted standing only in cases where there was "a change in the status of the nuclear family, or interference with a 'derivative’ right, or some abdication of parental responsibility” (Matter of Emanuel S. v Joseph E., 161 AD2d, at 87). We conclude that the statute is not so limited.
The equitable circumstances clause of section 72 does not establish a derivative right to standing for grandparents based upon some void in the nuclear family created by death, divorce or similar disability or by forfeiture resulting from neglect. On the contrary, the 1975 amendment adding this clause liberalized the law and granted all grandparents a right to seek standing that was no longer dependent upon the status of the parents. Moreover, the statute neither expressly nor implicitly excludes from its provisions grandparents of children who are part of an intact nuclear family. The sponsor of the bill noted that the new provision broadened the statute when he stated that the amendment would apply in a "variety of potential situations where the utilization of such a resource [i.e., visitation] could be of invaluable consequence to the children and ultimately the society” (1975 NY Legis Ann, at 51). Accordingly, we find nothing in the statutory language or legislative history foreclosing petitioner solely on the grounds that the grandchild resides with fit parents in an intact nuclear family.
It should be clear, however, that while liberalizing the law, the equitable circumstances provision is not intended to allow automatic standing to seek visitation. Standing should be conferred by the court, in its discretion, only after it has examined all the relevant facts. Although an intact family is not beyond the reach of the statute, that fact and the nature and basis of the parents’ objection to visitation are among the several circumstances which should be considered by courts deciding the standing question. Also an essential part of the inquiry is the nature and extent of the grandparent-grandchild relationship. It is not sufficient that the grandparents allege love and affection for their grandchild. They must establish a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court’s intervention. If the grandparents have done nothing to foster a relationship or *183 demonstrate their attachment to the grandchild, despite opportunities to do so, then they will be unable to establish that conditions exist where "equity would see fit to intervene.” The evidence necessary will vary in each case but what is required of grandparents must always be measured against what they could reasonably have done under the circumstances.
Family Court did not make an explicit finding on standing in this case but ruled orally that the respondents’ motion to dismiss the petition would be denied and thereafter addressed whether visitation was in the best interest of the child. The standing issue must be resolved first based on considerations such as we have outlined. The matter is, therefore, remitted to Family Court to address that question and if standing is found, to determine if visitation is in Max’s best interest.
Respondents contend also that their constitutional rights are violated if the court allows visitation over their wishes when there is no claim that they are separated or unfit. The question is not before us. We are not addressing an award of visitation, but only whether petitioner has standing to seek it.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Nassau County Family Court for further proceedings in accordance with this opinion.
Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
Order reversed, etc.

. Petitioner’s wife, the adoptive mother of Max’s mother, originally joined in the petition but she died after this appeal was calendared.

. Domestic Relations Law § 72 provides in part: "Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply to the supreme court by commencing a special proceeding * * * or may apply to the family court * * * [and] the court, by order, after due notice to the parent or any other person or party having care, custody, and control of such child * * * may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child” (L 1975, ch 431, § 1, as amended [emphasis added]).