■ In the Matter of DANIEL J. ZIARNO, Respondent, v JOANNE M. ZIARNO, Appellant. [726 NYS2d 820] —Spain, J. Appeal from an order of the Family Court of Albany County (Tepedino, J.H.O.), entered November 30, 2000, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for visitation with his grandchild.

Petitioner is the father of respondent and the maternal grandfather of her son (hereinafter the child), born in February 1993. Respondent never married the child's father, who died one month before the child's birth. Petitioner commenced this proceeding in August 1999 seeking visitation with the child, which respondent vigorously opposed. Following a hearing, Family Court determined that petitioner had standing to maintain the proceeding under Domestic Relations Law § 72 and granted the requested monthly visitation. Respondent's contention that Domestic Relations Law § 72 is unconstitutional was not addressed by Family Court because she failed to provide the Attorney General with notice of this challenge as required by Executive Law § 71. On respondent's appeal, the Attorney General has intervened in support of the constitutionality of Domestic Relations Law § 72.

The determination of grandparent visitation applications is a two-step process (*see,* Domestic Relations Law § 72). The threshold question to be decided is petitioner's standing. Where, as here, one of the child's biological parents is deceased, the grandparents have automatic standing to pursue visitation (*see,* Domestic Relations Law § 72). Where both parents are alive, the threshold standing question is resolved by determining whether the circumstances of the case show that "conditions exist which equity would see fit to intervene" (Domestic Relations Law § 72; *see, Matter of Emanuel S. v Joseph E.*, 78 NY2d 178, 181). Once standing is established, either automati-

cally or in equity, the court turns to the second step—a determination of whether visitation by the grandparents is in the child's best interest (*see*, Domestic Relations Law § 72; *Matter of Emanuel S. v Joseph E., supra*). The equitable circumstances standing question and the best interest of the child analysis entail inquiries which are similar—if not essentially indistinguishable—"since the factors that are relevant in determining standing are also germane to the issue of best interest" (*Matter of Luma v Kawalchuk*, 240 AD2d 896, 896; *see*, Scheinkman, Practice Commentaries, McKinneys Cons Laws of NY, Book 14, Domestic Relations Law C72:1, at 284). Accordingly, in our "best interest" review, we find it appropriate to rely on the equitable circumstances guidance provided by *Matter of Emanuel S. v Joseph E. (supra)*.

Initially, the death of the child's father provided petitioner with automatic standing to seek visitation (*see*, Domestic Relations Law § 72; *Matter of Emanuel S. v Joseph E., supra*, at 181), an issue conceded by respondent. Thus, the relevant inquiry is whether granting visitation between petitioner and the child—over the objection of the child's mother (petitioner's daughter)—would promote the child's best interest (*see*, *Matter of Emanuel S. v Joseph E., supra*; *Matter of Wenskoski v Wenskoski*, 266 AD2d 762, 763). Because we conclude that visitation should not have been granted on the facts of this case, we reverse.

In a written decision awarding visitation to petitioner, Family Court determined, *inter alia*, that petitioner had a good relationship with the child which was abruptly terminated by respondent without cause. The court partially relied upon the court-ordered psychological evaluation report and testimony of a clinical psychologist recommending visitation. Noting the generally unique value of relationships between grandparents and their grandchildren, Family Court found that "there is no indication that the child suffered any impairment during his occasional visits with [petitioner]."

Although there is no set formula in determining a child's best interest, Family Court must evaluate all the relevant facts. "[A]n essential part of the inquiry is the nature and extent of the [existing] grandparent-grandchild relationship" (*Matter of Emanuel S. v Joseph E., supra*, at 182). We are guided by the principle that "[i]t is not sufficient that the grandparents allege love and affection for their grandchild. They must establish a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court

perceives it as one deserving the court's intervention" (*id.*). Significantly, "if the fitness of a parent is not questioned, interference with that parent's right to limit those with whom his or her child associates is only justified upon a showing of 'some compelling State purpose which furthers the child's best interests'" (*Matter of David M. v Lisa M.*, 207 AD2d 623, 624, quoting *Matter of Ronald FF. v Cindy GG.*, 70 NY2d 141, 145).

Here, by petitioner's own account, his contacts with the child were clearly infrequent; he had only seen the child upwards of 18 to 20 times during the five-year period between the child's birth in February 1993 and June 1998, when he last came in contact with the child at a family graduation celebration. A review of his testimony reveals that most of these visits occurred at holiday get-togethers when respondent would bring the child to petitioner or at large family gatherings such as the graduation party in mid-1998. The record reveals that there have only been a few occasions when petitioner had contact with the child in a one-on-one, nongathering setting and only twice did petitioner initiate such a visit.* When the child was born, petitioner lived out of the area, returning to the City of Albany in mid-1995, when the child was two years old. The record is devoid of proof that petitioner made any genuine effort to establish a close, nurturing relationship with the child from the time of his birth in 1993 up until mid-1998. Nor is there any record evidence sufficient to suggest that respondent effectively frustrated a meaningful relationship between petitioner and the child during this critical five-year period.

Regarding respondent's objections to visitation, the record reveals that petitioner and respondent's mother divorced when respondent was seven years old, and he moved out-of-State when respondent was 14 years old. Thereafter his relationship with respondent has been strained. Respondent, who grew up in the home of her mother and stepfather, became pregnant with the child at 17 years of age, and she perceived petitioner to be unsupportive of her refusal to give up the child for adoption. Although petitioner asserts that the child would benefit from visitation with him because he would be a positive role model, respondent testified that petitioner is not the kind of person to whom she wants to expose her son believing that he "abandoned" her, physically and emotionally. According to re-

---

* Although the Law Guardian advocated in favor of visitation, she objects to the frequency of the ordered visitation (monthly) as against the weight of the evidence and inequitable because, at the most, petitioner saw the child only five times a year, "usually much less," and because the child has two other sets of grandparents.

spondent, petitioner has a controlling personality and a temper straining many of his familial relationships.

With regard to the psychologist's evaluation recommending visitation, we find its probative value to be suspect inasmuch as it was based in part on information provided by petitioner which was later revealed to be inaccurate. The psychologist testified that there is no absolute need for the child to see petitioner and he could not state that visitation would definitely be positive for the child. One revealing aspect of the psychologist's testimony was his confirmation that, on the day that he interviewed the parties, the child, who was then seven years old, did not know petitioner when he walked by him in the waiting room. In our view, the most significant and indeed the determinative factors in this case are the absence of any real existing relationship between the child and petitioner as of June 1998, the tension and strained relationship between respondent and petitioner, and respondent's right—as the child's fit and only living parent—to decide what is best for her child (*see, Matter of David M. v Lisa M.*, 207 AD2d 623, 624, *supra*), particularly with regard to her own biological parent.

Although any child might benefit from a good relationship with a grandparent (*see, Matter of Coulter v Barber*, 214 AD2d 195, 197), denial of the instant petition will not deprive the child of this experience. According to respondent, the child has two involved sets of grandparents, his deceased father's parents and respondent's mother and stepfather who, in respondent's eyes, has been her father. Accordingly, under these circumstances—despite petitioner's belatedly pursued but expressed interest in developing a relationship with the child—Family Court erred in finding that visitation was in the child's best interest (*see, Matter of Doe v Smith*, 156 Misc 2d 942; *see also, Matter of Coulter v Barber, supra; Matter of Gloria R. v Alfred R.*, 209 AD2d 179, *lv dismissed and lv denied* 85 NY2d 882; *Matter of La Porte v Rivers*, 144 AD2d 861; *cf., Matter of Kenyon v Kenyon*, 251 AD2d 763).

Inasmuch as the matter has been resolved in respondent's favor on nonconstitutional grounds, this Court will not address respondent's constitutional challenge to Domestic Relations Law § 72 (*see, Matter of Syquia v Board of Educ.*, 80 NY2d 531, 535; *Welcher v Sobol*, 222 AD2d 1001, 1004).

Crew III, J. P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petition dismissed.