Matter of Eileen K. v Elizabeth N. (2004 NY Slip Op 51808(U))

[*1]

Matter of Eileen K. v Elizabeth N.

2004 NY Slip Op 51808(U)

Decided on December 21, 2004

Family Court, Dutchess County

Sammarco, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 21, 2004

Family Court, Dutchess County
In the Matter of a Proceeding Under Article 6 of the Family Court Act Eileen K., Petitioner,
 against
Elizabeth N. and Kristopher K., Respondent.
V-01442-04

Douglas Drazen, Esq.
Attorney for Petitioner
20 Hawley St.
East Tower, Suite 200
Binghamton, NY 13901
Robert Ostertag, Esq.
Attorney for Respondent
17 Collegeview Ave.
Poughkeepsie, NY 12603
Diana Kidd, Esq.
Attorney for Respondent
97 Cannon St.
Poughkeepsie, NY 12601
Paul Mollica, Esq.
Law Guardian
4 Liberty St.
Poughkeepsie, NY 12601

Valentino T. Sammarco, J.
The petitioner (hereinafter the grandmother) is the paternal grandmother of A. (DOB 9/19/91) and J. (DOB 8/14/96). The respondent Elizabeth N. is the children's mother and Kristopher F. is the children's father.
 The grandmother has filed this petition for grandparent visitation pursuant to Domestic Relations Law §72, which provides that a grandparent has standing to make an application for grandparent visitation where either or both of the parents of a minor child are deceased or "where circumstances show that conditions exist which equity would see fit to intervene."
The mother moves : 1) to dismiss the grandmother's petition for lack of standing; 2) to strike the father's name from the caption and remove him from the case because he has no standing; and (3) to deny the father the right to have assigned counsel. She has also requested that counsel fees be awarded to her.
THE LAW ON STANDING
In determining the threshold issue of standing under Domestic Relations Law §72, the court is required to examine all relevant facts, including the nature and basis of the parent's objection to visitation and the nature and extent of the grandparent-grandchild relationship (Matter of Emanuel S. v Joseph E., 78 NY2d 178). The grandparent must establish an existing relationship with the grandchild or if the relationship has been frustrated by the parent, the grandparent must allege a sufficient effort to establish a relationship (see, Matter of Emanuel S. v Joseph E., 78 NY2d 178). The Court of Appeals in Emanuel stated that "the evidence necessary will vary in each case but what is required of grandparents must always be measured against what they could reasonably have done under the circumstances" (id. at 183).
In this case there is animosity between the mother and the grandmother, as evidenced by the affidavits and exhibits submitted by both parties. Animosity, alone, is not enough to deny [*2]standing (Lo Presti v Lo Presti, 40 NY2d 522). However, if the animosity stems from the grandparents' behavior or attitudes, then standing will not be conferred. New York Courts have denied standing where the grandfather was domineering and critical of the parents (Matter of Coulter v Barber, 214 AD2d 195); where there was emotional and physical abuse by the grandfather (Matter of Luma v Kawalchuk, 240 AD2d 896); and where the grandmother failed to respond appropriately to domestic violence by her son against the mother of the children (Matter of C.M. v MM., 176 Misc 2d 644).
In this case, the grandmother's petition alleges only that "without any cause related to the children's best interests, the petitioner has been denied visitation for nearly three years when she had previously enjoyed frequent visitation" with her grandchildren. The grandmother's petition omits any mention of the history of this case or of the reasons that she has not had contact with the children in the past three years.
THE FACTS
The Court takes judicial notice of its own records (see, Richardson, Evidence §2-209, 11th edition; Matter of Solomon D., 152 Misc 2d 7). The Court has also reviewed the orders of the Supreme Court , Dutchess County(Brands, J.) that have been provided to the Court as exhibits to the mother's motion to dismiss. These exhibits have not been disputed. This Court must consider the history of this case in order to determine if the grandmother has standing.
The parents and children moved to Dutchess County from Binghamton in July, 1998. The mother started a divorce action in August, 1998. In December, 1998, the father moved back to Binghamton and resided with the grandmother. [FN1] The Court bifurcated the case and tried the custody separately from other aspects of the divorce.
During the pendency of the custody trial, the children resided primarily with their mother in Dutchess County. The father resided with his parents in Binghamton and the children visited with the father at his parents' home two out of three weekends. The Court awarded custody to the mother on April 19, 2000 (Brands, J.).
 In July 2000, the father took the children for a week-long visitation. The father failed to return the children from the visit on the appointed day and disappeared with them. For a period of nine months, the father kept the two children, ages three and eight, away from the mother. He apparently moved from place to place to avoid discovery. During this time, the school-age child was not enrolled in school and neither child was permitted contact with the mother or any other family member. A neighbor in a mobile home park in California wondered why the older boy was not in school and reported the father to police. The father was arrested and the children were returned to their mother in April, 2001.
The father, who now resides with the grandmother , was convicted of custodial interference, an "E" felony, for his abduction of the children. He was sentenced to six months in jail and placed on probation until August, 2006. Two Orders of Protection, one from County Court stemming from the criminal proceeding and one from Supreme Court prevent him from [*3]having any contact with the children. [FN2]
 The mother alleges that the grandmother knew or had reason to know the whereabouts of the children during the time when they were with the father. She alleges that the grandmother assisted the father in his preparation for flight with the children. The grandmother denies any involvement.
After the children's return, the mother moved in Supreme Court for a restraining order preventing the grandmother from having contact with the children. A copy of the mother's application has been provided to the Court as Exhibit F. In settlement of that matter, the parties agreed that the grandmother would not contact the children without the consent of the mother or permission of the Supreme Court. This agreement was "So Ordered" by the Supreme Court (September 25, 2001, Brands, J.) .
In May, 2002, slightly more than six months after the entry of that Order, the mother filed for an Order of Protection in Family Court against the grandmother based on events that occurred in the months after the grandmother stipulated that she would not contact the children. The mother alleged that the grandmother hired a private investigator to spy on the children and that she rented a billboard to communicate with the children in violation of the Supreme Court order prohibiting contact with the children without permission of the Court or the mother. The mother claimed that these acts constituted the family offense of aggravated harassment in the second degree.
The grandmother acknowledged, in a Reply Affidavit dated April 12, 2002, that during December, 2001, she rented a billboard on the main road leading to the children's home to display a holiday greeting . The greeting stated the children's names and the message "We love you." The grandmother also acknowledged hiring a private investigator who followed one child's school bus and took photos of the children outside of their home. The grandmother acknowledged these acts and stated that no reasonable person could believe that she intended to annoy or alarm the children or the mother.
 In settlement of the family offense petition of May 2002, the grandmother consented to an Order of Protection preventing contact with the children. This Order of Protection expired in May, 2003. As part of this settlement the Supreme Court vacated, on consent, its order prohibiting contact without consent of the mother or of the Court (Brands, J., entered May 17, 2002).
STANDING
After review of the history, the Court concludes that the grandmother has failed to show any basis for equity to intervene to order visitation against the will of the mother. Although the mother does not dispute that the grandmother had a relationship with the children prior to their abduction by the father, it is clear that no relationship now exists. The grandmother's inability to have a relationship is due to her son's actions, her own failure to recognize the traumatic impact the kidnaping had on the children and the Order of Protection issued, on consent, against her.
[*4] Although the grandmother denies any direct part in the abduction, she minimizes the traumatic impact of the abduction on the children. The grandmother states in her Affidavit in Opposition to the Motion to Dismiss: " I do believe their removal from New York and not seeing their mother for nine months was not good for them, but as far as I know, the children suffered no physical injury...." Use of a private detective to spy on the children and the rental of a billboard on a major thoroughfare shows a troubling lack of sensitivity to the children's needs. The mother's opposition to visitation is reasonable in light of the grandmother's statements and actions.
Measuring the grandmother's acts against what she reasonably could have done, under the circumstances, and based upon the record and exhibits before the Court, the Court finds that the grandmother has failed to show circumstances in which equity would see fit to intervene.[FN3] Accordingly, the grandmother has no standing to bring this petition for grandparent visitation. The petition is dismissed.
OTHER REQUESTED RELIEF
The mother has also asked that the father be denied assigned counsel. The Court assigned Diana Kidd- Murphy, Esq., to represent the father, but no papers were submitted in opposition to this motion. Although unaware of the father's situation or financial ability at the outset of this case, the Court is now aware through exhibits submitted as part of the record that the father has privately retained counsel in Supreme Court to represent him on several applications to Judge Brands to allow him visitation with the children. Accordingly, the Court finds that the father is not entitled to assigned counsel. Diana Kidd-Murphy, Esq. is relieved of this representation, effective immediately.
As the grandmother's petition has been dismissed, the Court need not address whether the father is a proper party in this proceeding.
The Court denies the mother's request for counsel fees, as the Court has no authority to award counsel fees on this application ( Domestic Relations Law § 237; Coulter v Barber, 214 AD2d 195).
The foregoing shall constitute the decision and order of this court.
SO ORDERED.
DATED:Poughkeepsie, NY
December 21, 2004
______________________________
HON. VALENTINO T. SAMMARCO
JUDGE OF THE FAMILY COURT
COUNTY OF DUTCHESS
Appearances of Counsel:
Douglas Drazen, Esq.
Attorney for Petitioner
20 Hawley St.
East Tower, Suite 200
Binghamton, NY 13901
Robert Ostertag, Esq.
Attorney for Respondent
17 Collegeview Ave.
Poughkeepsie, NY 12603
Diana Kidd, Esq.
Attorney for Respondent
97 Cannon St.
Poughkeepsie, NY 12601
Paul Mollica, Esq.
Law Guardian
4 Liberty St.
Poughkeepsie, NY 12601
Footnotes

Footnote 1: The mother obtained a Temporary Order of Protection in Dutchess County Family Court that vacated the father from the marital residence. He moved back to Binghamtom, the petition for the Order of Protection was adjourned in contemplation of dismissal and the divorce proceeded. 

Footnote 2: The father has filed, without success, in Supreme Court and Family Court at least four separate times to obtain custody and visitation with the children. The most recent filing was in August 2003 in Supreme Court. As a result of that application, in December, 2003, the Supreme Court (Brands, J.) ordered evaluations of the parties at the expense of the father. No information has been provided as to the status of these evaluations although the parties agree that the father does not have visitation at this time. 

Footnote 3: The Court is disappointed that the Law Guardian failed to submit any papers, however, the record is fully developed and sufficient for the Court to make a decision without the Law Guardian's submission.