Matter of A.B. v C.D. (2006 NY Slip Op 50120(U))

[*1]

Matter of A.B. v C.D.

2006 NY Slip Op 50120(U) [10 Misc 3d 1078(A)]

Decided on January 25, 2006

Family Court, Westchester County

Edlitz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 25, 2006

Family Court, Westchester County
In the Matter of A.B., Petitioner,
against
C.D. and E.D., Respondents.
V-02XXX-05

Sandra B. Edlitz, J.
On February 3, 2005, Petitioner, maternal grandfather ("grandfather"), a widower, filed petitions against Respondents, the mother and father, for visitation with his grandchildren, F.H.D., born on February 6, 1997 and R.N.D., born on April 29, 1999. The parents, who are married to each other, are united in their opposition to visitation by the grandfather. The grandfather and the mother, his daughter, are Caucasian. The father is African-American. Attitudes and behavior about race are an issue of contention among the parties in this matter. The children were born of the marriage. The parents allege that the grandfather lacks standing in that he never established sufficient contact and a grandfatherly relationship with the children, that he has made racial slurs about African-Americans to them and others, and that his behavior is inappropriate and threatening. The parents maintain that they stopped all contact with the grandfather about three years ago after he walked out of their house angrily stating they would never see him again. They believe that it is not in the children's best interest to have contact with the grandfather. The grandfather argues that he loves his grandchildren, that there was a grandfatherly relationship between him and the children before his daughter advised him not to [*2]visit, that he made sufficient efforts to maintain and rekindle a relationship with Respondents and with his grandchildren, that the Respondents are wrongly denying him a continued grandparent-grandchild relationship, that he has standing, and that it is in the children's best interest to have visitation with him. The Law Guardian concurs with the parents.
The parties stipulated that the issues of standing and best interests would be bifurcated, and that the Court would first conduct a hearing on standing. If the Court were to find that Petitioner did not have standing, the Court would not conduct a best interests hearing and would dismiss the petition. The hearings were held on August 16, 2005, November 28, 2005 and January 10, 2006. Petitioner called the Respondent mother, his daughter, as a witness, then testified on his own behalf and rested. The Respondent parents then testified on their own behalf. The grandfather testified in rebuttal. The Court denied a prima facie motion to dismiss made by Respondents, and joined in by the Law Guardian, and the Court reserved decision on the standing issue.
After this lengthy hearing, the Court finds Petitioner has not met the threshold standing question that would trigger a hearing on whether visitation is in the children's best interests. The Court finds that Petitioner grandfather did not demonstrate a sufficient grandfatherly relationship with his grandchildren, and that he did not make appropriate efforts to establish and maintain such a relationship. Moreover, the grandfather's demonstrated attitude and conduct towards his daughter's inter-racial marriage and, thus, his attitude towards his grandchildren and his angry threatening behavior towards Respondents was so egregious that this is not a case where equity would see fit to intervene.
The parties were married in 1995. The children, who were born in 1997 and 1999, are now almost 9 and 7 years old. They were approximately 8 and approximately 6 at the filing of this petition, and 7 and 5 at the filing of a previous petition that was withdrawn as hereinafter discussed. The maternal grandmother died in May of 2000. The parents testified credibly that when the children's maternal grandmother ("grandmother"), was alive, although she visited regularly, the grandfather did not have meaningful visitation with the children. The grandmother would take the train or be driven by the grandfather to the parents' and children's home on Fridays, stay for the weekend, and the grandfather would come on Sunday to pick up his wife. Although he would spend some 1to 4 hours at Respondents' house, the parents testified credibly that the grandfather did not spend much time directly interacting with the children. The time the grandfather spent directly with the children during this period was limited. The mother testified that when her mother was alive, Petitioner would often call her on the telephone, and yell and scream at her, and tell her what a horrible person she was.
The mother testified that Petitioner, in a discussion with her, blamed her for her mother's death because the grandmother took ill after an argument at Respondents' home. There were no visits after her death for a few months. She testified that the grandfather began visiting the children once a month for approximately forty-five minutes a few months after the grandmother died. During these visits, the grandfather continued to make race an issue. There were also arguments about finances. The mother admits the children were not present when the [*3]grandfather made comments about her inter-racial marriage. The children were present however, when he yelled and screamed at her over financial and other issues, and the children would ask her why their grandfather was yelling at her.
The credible testimony of Respondent father confirmed the grandfather's lack of a sufficient relationship with his grandchildren throughout their lives, as well as the grandfather's inappropriate behavior in the parent's residence and elsewhere. The father testified that Petitioner also blamed him for his wife's death in 2000, and that Petitioner made negative comments and jokes about race. The Court finds that as far back as 2002, Petitioner threatened that he would hang the father in Court. Indeed, as recently as the last Court date on January 10, 2006, during a break in the proceedings, Petitioner made an inappropriate remark to the father.
The children last saw the grandfather in August, 2002 at the parents' home when the grandfather and mother had an argument about a mortgage on real property in Connecticut where Petitioner lives. The grandfather became angry, cursed at the mother and left saying he did not want any contact with her. The subject of a foreclosure of the Connecticut property, is or was at issue in the court in Connecticut. There is also a separate action or proceeding in a Connecticut court in which the grandfather is suing Respondents. The Court finds that the existence of the litigation in Connecticut is not the basis for the parents' opposition to visitation. If there is any relevance to these lawsuits, it is to show the grandfather's inappropriate and angry behavior towards the parents for their disagreements with him.
The grandfather admits and testified that after his wife died, he did not visit for two or three months because "the air between my daughter and son-in-law was very thick." He admitted that he told his daughter, "ever since you got married you turned for the worse. I don't want to know you." He claims that he got a letter from his daughter telling him not to visit, and that visitation ceased in July or August 2002. The grandfather maintains that although he has not seen the children since 2002, he received a message on his telephone answering machine from his granddaughter on or around Christmas 2003. The Court finds insufficient proof that the granddaughter made that call. The Court admitted into evidence copies of checks that the grandfather sent to the children as gifts after 2003 even after the visitation ceased. However, in either the May, 2004 petition, nor the grandfather's efforts to settle the parties' differences after the withdrawal of the first petition, mitigate the lack of a sufficient relationship with his grandchildren and his inappropriate behavior prior to the first petition.
There is no common law right for a grandparent to have visitation with their grandchild. The statutory authority for such a right is set forth in Family Court Act ("FCA") §651(b), in Domestic Relations Law ("DRL") §72, and in DRL §240(1). FCA 651(b) provides that:

When initiated in the family court, the family court has jurisdiction to determine, in accordance with subdivision one of section two hundred forty of the domestic relations law and with the same powers possessed by the supreme court in addition to its own powers, habeas corpus proceedings and proceedings brought by petition and order to show cause, for the determination of the custody or [*4]visitation of minors, including applications by a grandparent or grandparents for visitation rights pursuant to section seventy-two or two hundred forty of the domestic relations law.
Domestic Relations Law Section 72 (1) provides, in pertinent part, that
. . . [w]here either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child...may apply to the family court pursuant to subdivision (b) of section six hundred fifty-one of the family court act; and on the return thereof, the court, by order...may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.
As set forth in the seminal case of Emanuel S. v. Joseph E. 78 NY2d 178, 181 (1991), the Court must apply a two-pronged test in determining an application made pursuant to FCA §651(b) and DRL §§72 and 240(1). "First, it must find standing based on death or equitable circumstances which permit the court to entertain the petition. If it concludes that the grandparents have established standing, then it must determine if visitation is in the best interest of the grandchild." In this case, both parents are alive, living together with the subject children as an intact family and therefore the Court must determine if equitable circumstances exist.
Standing, which is the right to be heard, is not automatically conferred. The court must examine all of the relevant facts, and make a determination on a case-by-case basis. The factors which are germane to the issue of standing are the nature and extent of the grandparent-grandchild relationship and the nature and basis of the parents' objection to visitation. Emanuel S., supra at 182. In further elucidating upon the grandparent-grandchild relationship, the New York Court of Appeals went on to state that,

It is not sufficient that the grandparents allege love and affection for their grandchild. They must establish a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention. If the grandparents have done nothing to foster a relationship or demonstrate their attachment to the grandchild, despite opportunities to do so, then they will be unable to establish that conditions exist where equity would see fit to intervene.' The evidence necessary will vary in each case but what is required of grandparents must always be measured against what they could reasonably have done under the circumstances. Emanuel S., at 182-183.
Moreover, the nature and basis of the parents' objection is relevant. C.M. v. M.M., 176
Misc 2d 644, 672 N.Y.S. 2d 1012 (Family Court, Westchester Co., 1998).
[*5]
In determining standing in the instant case, the Court had two areas of concern. The first concern was that Petitioner did not demonstrate a sufficient relationship with the children, nor did he show an appropriate effort to establish and maintain that relationship. The second concern is based on the parents' valid objection regarding Petitioner's irrational behavior and inappropriate comments regarding race, in front of his daughter, his son-in-law, their friends family and others, as well as his angry and threatening behavior, including his yelling over disagreements about financial and other issues. While he did not scream at the children, he did scream at his daughter in their presence.
With respect to the Court's first concern, Petitioner did not make enough of an effort to spend time with the children while his wife was alive, or after her death, or to have a grandfatherly relationship with them. Petitioner has not seen the children since August, 2002. At that time the subject children were five and three. Even considering that the grandfather filed a prior petition in 2004, this is not a situation where there was a sufficient relationship or contact or a meaningful relationship between the grandfather and the children. After his wife died in 2000, his visits with the children were not substantial. He did not attempt to visit or have telephone contact and access to the children on a regular basis, and the time he spent with the children was not meaningful. His presence brought tension to the parents, due in part, to their fear, and experience, of his yelling.
The Court's second concern is Petitioner's inappropriate conduct and comments on race to the mother regarding her relationship before and during the marriage to Respondent father. Petitioner made racial slurs or inappropriate remarks involving race directly to her, her husband and her husband's family and their friends. At one time, he called her a pig, said she was disgusting and her husband was a white stalker. The grandfather does not believe himself to be a racist. He claims to love his grandchildren.
Although Respondents concede that the grandfather was never verbally abusive to the children and never said anything to the children concerning race, it appears that he is unwilling to accept responsibility regarding his behavior towards the parents and cannot refrain from making comments that offend them and others in their presence, such as the term "blended" which might in itself be offensive. He does not recognize that his comments about race are offensive. He does not understand the negative effect such behavior may have on the children.
Petitioner does not show an understanding that his behavior and comments concerning race diminish his professed regard for, and relationship with, the grandchildren. He does not recognize his explosive yelling at his daughter may upset the children. All of this is intertwined in the relationship with the grandfather and the grandchildren. C.M. v. M.M., supra. His lack of respect for the parents' inter-racial marriage devalues their relationship and, by implication, the children who are a product of that marriage.
The grandfather, by his behavior, has failed to demonstrate standing. This is not a case where equity would see fit to intervene. The Court was in a unique position to observe the demeanor and credibility of the witnesses. The Court finds the basis of the parents' opposition to
[*6]
the grandfather's petition for visitation to be sound. The grandfather's behavior is often negative and toxic. While the grandfather may love his grandchildren, the Court observed his excitability and explosive behavior. For all of the aforementioned reasons, the Court concurs with Respondents and the Law Guardian that the grandfather lacks standing based on his not having seen the children for years, his not developing a sufficient relationship with the children, his negative view of the Respondents' marriage and Respondent father's race, and his adverse relationship with Respondents. Accordingly, it is
 ORDERED, that the petitions are dismissed.
Dated: January 25, 2006