Matter of Jones v Laubacker (2018 NY Slip Op 08822)





Matter of Jones v Laubacker


2018 NY Slip Op 08822


Decided on December 21, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 21, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, NEMOYER, CURRAN, AND TROUTMAN, JJ.


1278.1 CAF 18-00903

[*1]IN THE MATTER OF LINDA M. JONES, PETITIONER-RESPONDENT,
v
SHANE LAUBACKER AND JOANNE LAUBACKER, RESPONDENTS-APPELLANTS. 






MUSCATO, DIMILLO & VONA, LLP, LOCKPORT (BRIAN J. HUTCHISON OF COUNSEL), FOR RESPONDENTS-APPELLANTS.
RYBAK, METZLER & GRASSO, PLLC, BATAVIA (JACQUELINE M. GRASSO OF COUNSEL), FOR PETITIONER-RESPONDENT. 
JAKE M. WHITING, LEROY, ATTORNEY FOR THE CHILDREN. 


 Appeal from an order of the Family Court, Genesee County (Sanford A. Church, A.J.), entered May 3, 2018, in a proceeding pursuant to Family Court Act article 6. The order, among other things, awarded petitioner visitation with the subject children. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs and the petitions are dismissed.
Memorandum: Petitioner, the paternal grandmother of the subject children (grandmother), commenced this Family Court Act article 6 proceeding seeking visitation with the children. Following a hearing, Family Court determined, inter alia, that visitation with the grandmother was in the children's best interests. Even assuming, arguendo, that the grandmother established standing by demonstrating "circumstances in which equity would see fit to intervene" (Matter of Emanuel S. v Joseph E., 78 NY2d 178, 181 [1991]; see Domestic Relations Law § 72 [1]), we agree with respondent father and respondent mother that the court's best interests determination lacks a sound and substantial basis in the record (see Matter of Hilgenberg v Hertel, 100 AD3d 1432, 1434 [4th Dept 2012]). We therefore reverse the order and dismiss the petitions.
On Sunday, June 25, 2017, the grandmother hosted brunch at her home. Almost every weekend prior to that date, the older of the two subject children (child) had at least one overnight visit at the grandmother's home, and then the parents would come to the grandmother's home for Sunday dinner. Present for brunch on June 25 were the parents, the child, and her uncle. Following brunch, the father and the uncle, who are brothers, engaged in a heated argument, which involved yelling. Before leaving, the father told the grandmother, "[N]o more weekends."
That same day, a report of child abuse or maltreatment was made to the Office of Children and Family Services (OCFS). The reporter's identity is confidential, per the normal protocol. We note, however, that the grandmother is an attorney, a longtime practitioner in Family Court, and an administrative law judge in OCFS. The report was investigated by Child Protective Services (CPS) and determined to be unfounded.
On Tuesday, June 27, the grandmother sent the father a text message, asking whether he would bring the child to her home the next weekend or whether she had to file a petition in Family Court. The father did not respond. The grandmother sent a similar text message to the mother, who responded that, per the advice of CPS, there would be no visitation until the investigation concluded. The mother advised the grandmother to contact the parents' attorney [*2]with any questions. On Wednesday, June 28, the grandmother filed a petition seeking visitation with the child every weekend from Friday at 10:00 a.m. to Sunday at noon. The petition accused the father of committing "an incident of domestic violence" on June 25, and noted that a CPS investigation of the incident "has commenced."
The first court appearance was July 14. The court asked the parents whether they were willing to allow temporary visitation with the grandmother. They were not. The next day, the uncle filed a police report accusing the father of assaulting him at the grandmother's home on June 25. According to the uncle, the father "picked up a chair and slammed it down" while the child's feet were under it. The child was unhurt. The father was yelling. The uncle told him to go outside. The father asked the uncle "to come outside like he wanted to fight." The uncle refused and responded, " you go outside.' " The father "went to push" the uncle, but the uncle "knocked [his] arms away." The father yelled, threw "papers and hair bands," and stomped away. The uncle wanted the father to be "held accountable for his actions."
A police officer interviewed the grandmother, who urged him to arrest the father for harassment. She explained to the officer that she works for OCFS reviewing CPS reports, including cases of fatality, and that she believed the father was going to kill the child. She stated: "When we were in court yesterday, I could see he hasn't changed his mind or demeanor . . . We asked about [temporary visitation]. Nothing, okay? So, it was clear to me that he still doesn't feel anything he did was inappropriate . . . ." The grandmother then gave her version of the incident, which was consistent with the uncle's version. The District Attorney declined to press charges.
On November 24, the younger of the two subject children (baby) was born. Shortly thereafter, the grandmother filed a second petition seeking visitation with the baby. The matter proceeded to a fact-finding hearing, after which the court ordered the parents to allow the grandmother to exercise visitation with the children two weekends per month. A Justice of this Court stayed execution of the order pending appeal.
It is well established that a fit parent has a "fundamental constitutional right" to make parenting decisions (Troxel v Granville, 530 US 57, 69-70 [2000]; see Hilgenberg, 100 AD3d at 1434). For that reason, the Court of Appeals has emphasized that "the courts should not lightly intrude on the family relationship against a fit parent's wishes. The presumption that a fit parent's decisions are in the child's best interests is a strong one" (Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; see Hilgenberg, 100 AD3d at 1434).
The parents here are fit. Although the court did not make an express finding with respect to their fitness in its decision, it looked favorably upon the parents. Specifically, the court referred to the child's family situation as "fortunate," discussed her "good relationships" with her parents, and praised the "strength of her nuclear family." Moreover, the record is sufficiently complete for us to make our own finding that the parents are fit (see generally Matter of Belcher v Morgado, 147 AD3d 1335, 1336 [4th Dept 2017]). Their counselor provided glowing testimony about the parents' relationship with each other and with their children. Furthermore, the maternal grandmother, a retired neonatal nurse, testified that the parents are "great parents," the child "adores them," and she has no concerns about their parenting. The parents both testified that they have a loving relationship and provide the children with appropriate support and discipline. There was virtually no evidence to the contrary.
Because the parents are fit, their decision to prevent the children from visiting the grandmother is entitled to "special weight" (Troxel, 530 US at 70). Additionally, our examination of the record reveals that their decision is founded upon legitimate concerns. The father testified that he expected the argument following brunch to be forgiven by the next weekend and for the family relationship to return to normal. In light of the CPS investigation and the litigation in Family Court, however, he no longer felt comfortable leaving the child with the grandmother. The mother testified to her observation that the child's behavior has improved since she stopped visiting the grandmother, whom the mother believed to be a bad influence. The court wholly ignored that testimony by the parents, erroneously refusing to give it the weight to which it is entitled.
Additional factors for the court to consider in rendering a best interests determination [*3]include "whether the grandparent and grandchild have a preexisting relationship, whether the grandparent supports or undermines the grandchild's relationship with his or her parents, and whether there is any animosity between the parents and the grandparent" (Hilgenberg, 100 AD3d at 1433, citing E.S., 8 NY3d at 157-158). Although the grandmother and the child have an extensive preexisting relationship, the grandmother exhibited a willingness to use her position in the legal system to undermine the parental relationship by initiating Family Court proceedings almost immediately, rather than making a good faith attempt to fix her family relationships without resorting to litigation. That evidence makes it difficult to draw any conclusion other than that the grandmother "is responsible for escalating a minor incident into a full-blown family crisis, totally ignoring the damaging impact [her] behavior would have on the [family relationships] and making no effort to mitigate that impact" (Matter of Articolo v Grasso, 132 AD3d 1193, 1195 [3d Dept 2015]).
There is now palpable animosity between the parties. Approximately three months after the litigation commenced, the parents legally changed their hyphenated surname to remove the grandmother's surname. "I'm no longer part of that family," the father testified at the hearing. "[T]his is not how families act towards each other." Furthermore, there is evidence demonstrating that the grandmother and the uncle are an emotional trigger for the father. That evidence was corroborated by the testimony of the parents' counselor, who testified that the father is mild-mannered, but that he became upset with the grandmother because she "was very controlling." The grandmother eventually acknowledged the extent of the animosity that had developed in her family. During rebuttal, she testified that it would be better to pick the children up and drop them off at a neutral location. "After listening to [the parents]," she testified, "it's probably best that they don't come to the house. That seems like that's going to be stressful and difficult for everybody." Although animosity alone is not a sufficient reason to deny visitation (see E.S., 8 NY3d at 157), here, the animosity threatens to disrupt the harmonious functioning of the family unit.
Thus, upon consideration of all the relevant factors, we conclude that visitation with the grandmother is not in the children's best interests and that the court's determination to the contrary lacks a sound and substantial basis in the record (see Hilgenberg, 100 AD3d at 1433-1434).
Entered: December 21, 2018
Mark W. Bennett
Clerk of the Court