Egan Jr., J.
Appeal from an order of the Family Court of Sullivan County (McGuire, J.), entered January 20, 2012, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondents’ child.
Respondents, Rocco Laudadlo (hereinafter the father) and Stephanie Montalvo (hereinafter the mother), are the unmarried parents of a child (born in 2011), and petitioner is the child’s paternal grandmother. Following an incident that occurred when the child was approximately two months old, during the course of which the mother’s sister struck petitioner, respondents cut off visitation between petitioner and the child. Petitioner thereafter commenced this proceeding seeking visitation with the child and, following a bifurcated hearing, Family Court granted petitioner’s application and awarded petitioner visitation on the first Sunday of each month. Respondents now separately appeal.
We affirm. Where a grandparent seeks visitation and, as is the case here, both of the child’s parents are living, Family Court first must ascertain whether “conditions exist which equity would see fit to intervene” (Domestic Relations Law § 72 [1]) in order to confer standing (see Matter of Van Nostrand v Van Nostrand, 85 AD3d 1352, 1352 [2011], lv denied 17 NY3d 708 [2011]; Matter of Couse v Couse, 72 AD3d 1231, 1231-1232 [2010]). “An essential part of the standing inquiry is the nature and extent of the existing grandparent-grandchild relationship ... [as well as] the basis for the parents’ objection to visitation” (Matter of Kenyon v Kenyon, 251 AD2d 763, 763 [1998] [citations omitted]; see Matter of Van Nostrand v Van Nostrand, 85 AD3d at 1352-1353). Should Family Court determine that the grandparent has standing to seek visitation, the question then becomes whether such visitation is in the child’s best interests (see Matter of Couse v Couse, 72 AD3d at 1232; Matter of Kenyon v Kenyon, 251 AD2d at 763; see also Matter of Quinn v Heffler, 102 AD3d 876, 876 [2013]). Inasmuch as Family Court had the advantage of assessing the witnesses’ testimony and demeanor firsthand, its credibility determination “should not be set aside if it is supported by a sound and substantial basis in the record” (Matter of Quinn v Heffler, 102 AD3d at 876; see Matter of Thompson v Gibeault, 305 AD2d 873, 874 [2003]).
Here, petitioner testified that she purchased a crib and dresser for the child, was present for the child’s birth, visited the child in the hospital, prepared dinner for the family when the child came home from the hospital and thereafter visited *1093 the child “at least [10] times” during the first month of the child’s life. According to petitioner, each of these visits would last “[a] few hours,” during which time she would hold, feed and change the child. Additionally, petitioner attended the child’s first doctor’s appointment, brought respondents and the child to a local shopping mall for the child’s first photos and transported the family to New York City to visit other relatives and retrieve gifts for the child. Although the mother contended that petitioner lost interest in the child in late April 2011, the mother also acknowledged that petitioner curtailed her visitations — at the mother’s request — in order to give the mother more time alone with the child. Finally, the father testified that after visitation between petitioner and the child was cut off in May 2011, petitioner contacted him and asked to see the child on approximately four occasions, which he would not permit. Such proof, in our view, demonstrates a sufficient existing relationship between petitioner and the child to confer standing— particularly given the age of the child and the brief interval of time that elapsed between her birth and the interruption in visitation (see generally Matter of Lipton v Lipton, 98 AD3d 621, 622 [2012] [“In assessing the sufficiency of the grandparent’s efforts, what is required of grandparents must always be measured against what they could reasonably have done under the circumstances”] [internal quotation marks and citations omitted]; Matter of Waverly v Gibson, 79 AD3d 897, 899 [2010] [same]).
As to the second part of the test — whether visitation is in the child’s best interests — we find that Family Court’s decision to award visitation to petitioner has a sound and substantial basis in the record. Although it is apparent from the record that the relationship between petitioner and respondents is strained, “an acrimonious relationship is generally not sufficient cause to deny visitation” (Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; see Matter of Helen G. [James K.T.-Laverne W.], 96 AD3d 666, 666-667 [2012]). The mother’s stated objections to the requested visitation were conclusory (see Matter of Stellone v Kelly, 45 AD3d 1202, 1205 [2007]; compare Matter of Hilgenberg v Hertel, 100 AD3d 1432, 1434 [2012] [evidence of serious wrongdoing by grandparent]; Matter of Van Nostrand v Van Nostrand, 85 AD3d at 1353 [same]*) and, although the father raised legitimate concerns in this regard, including the child’s alleged exposure to secondhand smoke at petitioner’s home, we are satisfied that *1094 Family Court’s order contains sufficient safeguards to address these issues. Accordingly, we discern no basis upon which to disturb Family Court’s award of visitation.
Rose, J.E, Lahtinen and Stein, JJ., concur. Ordered that the order is affirmed, without costs.

 The mother contended that the underlying relationship with petitioner was “always going to be hostile” and admitted that she “Q]ust [did not] want [the child] around [petitioner].”