■ In the Matter of KATHY RUBEL, Respondent, v MARTHA WILSON, Appellant, et al., Respondent. (Proceeding No. 1.) In the Matter of KATHY RUBEL, Respondent, v MARTHA WILSON et al., Appellants. (Proceeding No. 2.) [975 NYS2d 230]—

Spain, J. Appeals (1) from an order of the Family Court of Sullivan County (McGuire, J.), entered February 4, 2011, which,

in two proceedings pursuant to Family Ct Act article 6, found petitioner to have established standing, and (2) from an order of said court, entered March 18, 2011, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for visitation with her grandchild.

In 2011, petitioner, the maternal grandmother of Dakota (born in 2004) and Cassidy (born in 2007), commenced these proceedings against respondent Martha Wilson (hereinafter the mother), and the children's fathers,[1] seeking visitation with the children following the deterioration of petitioner's relationship with the mother. After bifurcated hearings, Family Court issued two detailed written decisions, the first—entered February 4, 2011—determining that petitioner had standing to proceed with the petitions, and the second—entered March 18, 2011—granting petitioner's application in proceeding No. 1 for visitation with Dakota, but dismissing petitioner's application in proceeding No. 2 for visitation with Cassidy. The mother appeals both orders[2] and Cassidy's father, respondent Richard Rivera, joins in the mother's appeal from the March 2011 order.[3] Petitioner's contention on appeal that she should have been granted visitation with Cassidy is not properly before this Court inasmuch as she has not appealed from Family Court's order (see Hecht v City of New York, 60 NY2d 57, 61 [1983]; Matter of Sanders v Slater, 53 AD3d 716, 717 n [2008]).

Initially, we are unpersuaded by the mother's contention that Family Court should have dismissed the petitions for failure to state a cause of action. Liberally construing the visitation petition and giving it the benefit of every favorable inference, we find that the information therein is sufficient to "fit within any cognizable legal theory" and gave the mother fair notice of the

---

1. Dakota's father was named as a respondent in proceeding No. 1; however, he did not participate in the proceedings before Family Court and his whereabouts were unknown.

2. Because the February 2011 order finding that petitioner has standing is a nonfinal order, the mother cannot appeal from that order as of right (see Family Ct Act § 1112 [a]). The mother's appeal from the final order brings this order up for review, but only with respect to Dakota given Family Court's dismissal of the proceeding (No. 2) with respect to Cassidy.

3. The mother and Rivera may not appeal from that part of the March 18, 2011 order as dismissed proceeding No. 2 as they are not aggrieved by the dismissal of that proceeding. While Family Court determined that petitioner had standing as to Cassidy (proceeding No. 2), it found that ordering visitation with her was not in her best interests, given that petitioner had been unable to establish a relationship with her after her August 2007 birth and prior to the mother's November 2007 termination of all contact. The court did, however, urge that Cassidy be included in Dakota's visits with petitioner, a recommendation that this Court strongly endorses.

claims (*Matter of McBride v Springsteen-El*, 106 AD3d 1402, 1402 [2013] [internal quotation marks and citation omitted]; *see Matter of Pamela N. v Neil N.*, 93 AD3d 1107, 1108 [2012]).

Family Court correctly determined that petitioner established standing to petition for visitation with Dakota. When a child's parents are living, a grandparent who seeks visitation with his or her grandchild must establish that "conditions exist which equity would see fit to intervene" (Domestic Relations Law § 72 [1]) in order to obtain standing (*see Matter of Laudadio v Laudadio*, 104 AD3d 1091, 1092 [2013]). The grandparent "must establish a sufficient existing relationship with [his or her] grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (*Matter of Emanuel S. v Joseph E.*, 78 NY2d 178, 182 [1991]). In the latter situation, the grandparent's "effort is measured against what [he or she] could reasonably have done under the circumstances" (*Matter of Luma v Kawalchuk*, 240 AD2d 896, 896 [1997]; *see Matter of Emanuel S. v Joseph E.*, 78 NY2d at 183; *Matter of Couse v Couse*, 72 AD3d 1231, 1232 [2010]). If the grandparent has established the right to be heard, Family Court will then consider whether such visitation is in the child's best interests (*see Matter of E.S. v P.D.*, 8 NY3d 150, 157 [2007]; *Matter of Hill v Juhase*, 105 AD3d 1278, 1279-1280 [2013]; *Matter of Couse v Couse*, 72 AD3d at 1232).

Here, the testimony supports Family Court's finding that petitioner enjoyed a regular and loving relationship, and frequent and extended visitation, with Dakota from his birth until 2007, when he was 3½ years old. Specifically, Dakota regularly stayed with petitioner at her home for extended weekend visits, multiple times per month, when she cared for him. When petitioner moved to West Virginia for nine months in 2005, Dakota stayed with petitioner for an extended period of time while the mother recovered from surgery, although the exact duration of that stay was disputed by the parties. Upon petitioner's return to New York in 2006, she lived with the mother and Dakota for five or six months, and thereafter continued to take Dakota on her days off from work, including caring for him over weekend stays. Following a disagreement between petitioner and the mother in November 2007—just months after Cassidy's birth—as to when Dakota was to return home, the mother cut off all contact between the children and petitioner, later telling petitioner that she would call the police if she came to the house; the mother avoided or refused all contact with petitioner and requests for visitation through 2010.

Thereafter, petitioner had difficulty locating the mother, who moved three times with the children without providing family members with her new address or telephone number. During that period, petitioner repeatedly sought help from various family members to talk with the mother to request that she permit petitioner to see Dakota, albeit to no avail. Further efforts by petitioner would clearly have been futile, as the court recognized. We find that such proof evinced a sufficient existing relationship between petitioner and Dakota to confer standing.

Turning to whether visitation with petitioner is in the best interests of Dakota, we find that Family Court's affirmative determination, made after a fact-finding hearing and a *Lincoln* hearing with the child, then age seven, is supported by a sound and substantial basis in the record. The court characterized petitioner's relationship with Dakota as "healthy and nurturing," discredited many of the mother's proffered explanations for why she opposed or cut off all contact between the children and petitioner as not the true reasons for her objections to visitation, and found that the termination of visitation "arose without a reasonable basis." While the mother has estranged herself from petitioner and has been unwilling to accept any efforts by petitioner to repair that relationship, "an acrimonious relationship is generally not sufficient cause to deny visitation" (*Matter of Laudadio v Laudadio*, 104 AD3d at 1093 [internal quotation marks and citation omitted]). Here, as the court found, the record establishes that the mother's decision to terminate all visitation with petitioner, who had enjoyed "unfettered access" to Dakota for the first almost four years of his life, was not due to any objection or concerns regarding the care that petitioner provided to Dakota but, rather, resulted solely from their disagreement in 2007 over petitioner's untimely return of Dakota to the mother. Although Family Court noted that not returning a child home when requested by a parent raises concerns, there was insufficient evidence as to whether the parties had a clear understanding of the exact time when the mother expected Dakota home, and it was undisputed that the delay was caused in part due to a snowstorm that made the roadways impassable and unsafe.

Upon our review of the record, we find no reason to disturb Family Court's decision, which has a sound and substantial basis in the record, that the termination of petitioner's long-standing and nurturing relationship with Dakota was without a reasonable basis and that it is in Dakota's best interests to resume such relationship with petitioner (*see Matter of Laudadio v Laudadio*, 104 AD3d at 1093). Accordingly, Family Court's

award of the first Sunday of the month visitation, with a planned transition given the protracted period of inaccess, will not be disturbed. We add, based upon concerns raised by the testimony, that the parties are directed not to disparage or engage in name calling of one another or fight in the presence of the children.

Stein, J.P., McCarthy and Garry, JJ., concur. Ordered that the appeal from the order entered February 4, 2011 is dismissed, without costs. Ordered that the order entered March 18, 2011 is affirmed, without costs.