Matter of Susan II. v Laura JJ. (2019 NY Slip Op 07451)





Matter of Susan II. v Laura JJ.


2019 NY Slip Op 07451


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

526273

[*1]In the Matter of Susan II., Respondent,
v
Laura JJ., Appellant, et al., Respondent.

Calendar Date: September 10, 2019

Before: Garry, P.J., Clark, Mulvey, Devine and Pritzker, JJ.


Matthew Hug, Albany, for appellant.
McNamee Lochner PC, Albany (Bruce J. Wagner of counsel), for Susan II., respondent.
Ivy M. Schildkraut, Rock Hill, attorney for the children.



Pritzker, J.
Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered January 4, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondents' children.
Respondent Laura JJ. (hereinafter the mother) and respondent Phillip JJ. (hereinafter the father) are the divorced parents of two children (born in 2005 and 2007), both of whom were born in London, England.[FN1] Petitioner (hereinafter the grandmother) is the maternal grandmother of the children. Shortly after the older child's birth, the mother left the father and she and the child moved in with the grandmother; however, the mother thereafter briefly reconciled with the father, at which time the younger child was conceived. Following the birth of the younger child, and her divorce from the father, the mother moved the children from their home in London to the Town of Woodstock, Ulster County. Shortly thereafter, the grandmother and her husband, Gerald II., moved from England to the Town of Rhinebeck, Ulster County and purchased a home for the mother and the children in Woodstock. During this time, the grandmother was actively involved in the children's lives. The grandmother and Gerald II. became estranged from the mother and the children in 2008 when the mother accused him of sexually abusing the children. However, toward the end of 2008, the mother began allowing the children contact with the grandmother, which was supervised by the mother at first and then eventually became unsupervised. By 2010, the grandmother saw the children approximately once a week and on weekends for sleepovers.
In the summer of 2011, the mother again made accusations of sexual abuse of the children by the grandmother and Gerald II. Subsequently, the mother brought the older child to a doctor who, after an examination, reported the matter to Child Protective Services (hereinafter CPS). CPS, however, ultimately closed its case as unfounded after an investigation. The mother then moved to the City of Ithaca, Tompkins County and, in August 2011, filed for a temporary order of protection against the grandmother based upon allegations that the grandmother had been grooming the children for sexual purposes. Family Court (Sherman, J.) issued the temporary order of protection and referred the matter to the Ulster County Family Court (McGinty, J.), which subsequently terminated the order of protection.
In June 2012, the grandmother filed an amended visitation petition and order to show cause seeking visitation with the children, as well as an order prohibiting the mother from moving the children outside the state and mandating that the mother inform the grandmother of her residence. The hearing on the amended petition was bifurcated, with the first stage devoted to determining whether the grandmother possessed standing and the second stage determining whether visitation with the grandmother was in the best interests of the children. At the close of the hearing on standing, the mother moved to dismiss the proceeding on the ground that Domestic Relations Law § 72 is unconstitutional as applied. In June 2014, Family Court (Mizel, J.) issued two decisions: the first denied the mother's motion to dismiss and the second found that the grandmother had standing.
Following Family Court's decisions, an eight-day hearing was conducted between August 2014 and January 2017 on the issue of best interests. The matter was briefly adjourned in December 2014, so that psychological evaluations of the grandmother, the mother, Gerald II. and the children could be completed. Thereafter, the forensic evaluator issued a report in May 2015 finding that the mother has a delusional disorder and that it was in the children's best interests to have a normalized relationship with all family members. At the end of the hearing, and after a Lincoln hearing, the court found that it was in the best interests of the children to have visitation with the grandmother. The mother appeals. We affirm.
We disagree with the mother's contention that Family Court erred in finding that the grandmother had standing. Pursuant to Domestic Relations Law § 72, grandparents may seek visitation with their grandchildren where they can "establish circumstances in which 'equity would see fit to intervene'" (Matter of Hill v Juhase, 105 AD3d 1278, 1279 [2013], quoting Domestic Relations Law § 72 [1]; see Matter of Vandenburg v Vandenburg, 137 AD3d 1498, 1498 [2016]). "It is not sufficient that the grandparents allege love and affection for their grandchild[ren]. They must establish a sufficient existing relationship with their grandchild[ren], or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Emanuel S. v Joseph E., 78 NY2d 178, 182 [1991]; see Matter of Hill v Juhase, 105 AD3d at 1279). "Notably, essential components of the standing inquiry are the nature and extent of the grandparent-grandchild relationship and the nature and basis of the parent's objection to visitation" (Matter of Hill v Juhase, 105 AD3d at 1280 [internal quotation marks, brackets and citation omitted]). If standing is established, the court will then consider whether such visitation is in children's best interests, which "requires evaluation of a variety of factors, including the nature and extent of the existing relationship between the grandparent and child[ren], the basis and reasonableness of the parent's objections, the grandparent's nurturing skills and attitude toward the parent[], the attorney for the child's assessment and the child[ren]'s wishes" (Matter of Vandenburg v Vandenburg, 137 AD3d at 1499 [internal quotation marks, ellipsis, brackets and citations omitted]; see Matter of Articolo v Grasso, 132 AD3d 1193, 1194 [2015]). "In making that inquiry, neither the presumed wishes of the child[ren] nor the existence of animosity between the parent and the grandparent is a proper reason for denial of visitation in isolation" (Matter of Articolo v Grasso, 132 AD3d at 1194 [internal quotation marks, brackets and citations omitted]).
As to standing, the hearing testimony established that the grandmother had, at one time, a loving relationship with the children, that she spent substantial time with them and she also provided them financial support. Indeed, the testimony showed that the grandmother was an active part of the children's lives until one day the mother decided that she no longer trusted her. The testimony also showed that the grandmother would babysit the children, have them overnight, bring them to school, bring them to activities, pay for the older child's private school and provide for them financially. The record also reveals that the mother and the older child lived with the grandmother for some time early on in this child's life. Additionally, even after the mother told the grandmother that she did not want her to be around the children, the testimony showed that the grandmother still made an effort to continue her relationship with the children by having a cake and balloons delivered to the mother's house, which the mother threw away. Accordingly, Family Court properly determined that the grandmother established standing to seek visitation with the children (see Matter of Vandenburg v Vandenburg, 137 AD3d at 1499; compare Matter of Hill v Juhase, 105 AD3d at 1279).
Turning now to best interests, although the mother is vehemently against the grandmother having visitation, Jerold Grodin, the court-appointed psychologist, opined, after a thorough evaluation process, that the mother suffers from a delusional disorder and that visitation with the grandmother would be in the best interests of the children. Grodin also noted that there was not any corroboration for the mother's allegations that the grandmother and Gerald II. sexually abused the children, nor was there corroboration regarding the mother's own alleged abuse. Additionally, Elizabeth Schockmell, a clinical psychologist who reviewed extensive records from this matter, testified that the mother has repressed her own past trauma and, due to that, may plant memories in other persons' minds, such as the children. The mother's testimony reveals that she feels that the grandmother dismissed her when she told her that she had been abused by her maternal grandfather, and the mother feels like the grandmother is overbearing and interferes in her life. Thus, despite the animosity between the mother and the grandmother, because the testimony establishes that there was a loving relationship between the grandmother and the children, the grandmother showed nurturing skills and the mother's objection to visitation was based on an unfounded allegation, Family Court's determination that visitation with the grandmother is in the best interests of the children has a sound and substantial basis in the record (see Matter of Rubel v Wilson, 111 AD3d 1065, 1068 [2013]; Matter of Varney v McKee, 44 AD3d 1178, 1179 [2007]; compare Matter of Vandenburg v Vandenburg, 137 AD3d at 1499; Matter of Articolo v Grasso, 132 AD3d at 1194). Further, we are unpersuaded by the mother's argument that the court violated her fundamental constitutional rights by not employing a strong presumption that a fit parent's wishes represent the best interests of the children. Although "[t]he presumption that a fit parent's decisions are in the child[ren]'s best interests is a strong one" (Matter of Jones v Laubacker, 167 AD3d 1543, 1545 [2018]), this does not mean that a parent enjoys a constitutionally guaranteed carte blanche veto as to grandparent visitation, particularly when based upon tenuous reasoning and delusional thinking that has no support in the record, as is the case here (cf. Matter of E.S. v P.D., 8 NY3d 150, 160-161 [2007]).
The mother also argues that this Court should decrease the visitation schedule; we disagree. After the conclusion of some therapeutic supervised visitation, Family Court ultimately granted the grandmother a seven-hour unsupervised visit one time per month, as well as weekly telephone contact. Although the mother asserts that this visitation schedule deprives her of "significant 'quality time'" with the children, we find this amount to be reasonable and, therefore, we will not disturb the schedule (see Matter of Rubel v Wilson, 111 AD3d at 1068-1069; Matter of Laudadio v Laudadio, 104 AD3d 1091, 1092 [2013]; compare Matter of Dubiel v Schaefer, 108 AD3d 1093, 1095 [2013]). The mother's remaining assertion — that the attorney for the child improperly advocated a position that was contrary to the children's interests — is unpreserved, as she failed to move for the removal of the attorney for the child (see Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1297 [2017]; see Matter of Elniski v Junker, 142 AD3d 1392, 1393 [2016]).
Garry, P.J., Clark, Mulvey and Devine, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father is uninvolved in these proceedings.