■ In the Matter of Janet Pinsky, Respondent, v Estee Botnick, Appellant. [962 NYS2d 668]—

In a proceeding pursuant to Family Court Act article 6 and Domestic Relations Law § 72 for grandparent visitation, the mother appeals (1), as limited by her brief, from so much of an order of the Family Court, Nassau County (Stack, J.H.O.), dated March 22, 2012, as, after a hearing, granted the paternal grandmother's petition for visitation with the subject children to the extent of awarding her three hours of visitation with the children every other Sunday commencing on June 3, 2012, as well as such other visitation as to which the parties shall agree, and directed the mother to participate in therapy, and (2) from an order of the same court dated July 25, 2012, which denied her motion to modify the order dated March 22, 2012, so as to delay the commencement of visitation until October 14, 2012.

Ordered that the order dated March 22, 2012, is reversed insofar as appealed from, on the facts and in the exercise of discretion, with one bill of costs, the petition for grandparent visitation is denied, and the provision thereof directing the mother to participate in therapy is deleted; and it is further,

Ordered that the appeal from the order dated July 25, 2012, is dismissed as academic, without costs or disbursements, in light of our determination on the appeal from the order dated March 22, 2012, and because the new date sought for the commencement of visitation has already passed.

The mother, Estee Botnick (hereinafter the mother), married Jason Botnick on August 15, 1999, and there are four children of the marriage. On November 27, 2011, Jason passed away at the age of 35, at which time the children were ages 9, 7, 5, and 3, respectively. According to the mother, immediately prior to Jason's death, "[a]s the ICU team was literally trying to resuscitate Jason," the paternal grandmother, Janet Pinsky (hereinafter the grandmother), said to her, "We are going to have to make a schedule with the kids." On January 3, 2012, the mother received a letter from the grandmother's attorney, threatening legal action if the mother did not permit the grandmother immediate visitation with the children, and requesting a response by noon the following day. The mother responded by inviting the grandmother over for a visit that evening. In a reply email, the grandmother asserted, among other

things, that her major concern was access to the children going forward, which the mother's email did not address, and requested that the mother respond to the grandmother's attorney as to when the mother or her legal representative could meet before the end of the week. Thereafter, the mother invited the grandmother to her home to visit with the children on January 8, 2012. Nevertheless, three days later, and approximately six weeks after Jason's death, the grandmother caused the mother to be served with the petition for visitation while the mother was at home with the children.

At the hearing on the petition, the grandmother testified that she had a close relationship with the children. The grandmother also acknowledged that the mother was a fit parent. The mother testified that after she was served at home with the petition, the three older children, who were grieving the death of their father, became "hysterical" upon learning that the mother had to go to court. The mother testified that by initiating this proceeding, the grandmother had caused the three older children to become fearful that the grandmother was going to take them away. She testified that the children needed time to get over their fears, and to "deal with the fact that their father has passed away." The attorney for the children informed the Family Court that the children did not wish to see their grandparents.

The Family Court, which had denied the mother's application to appoint a neutral forensic evaluator, accepted into evidence a report prepared by Peter J. Favaro, Ph.D., who was retained by the mother. In the report, Dr. Favaro opined, inter alia, that the children were experiencing symptoms common to "complicated bereavement." According to Dr. Favaro, the three older children had reported having bad dreams about seeing their grandmother and that she would take them away. He concluded that for the sake of the children's future relationship with the grandmother, "it would be unwise to have them pair thoughts of fear of seeing [her] with their father's passing," and that forcing an interaction would only strengthen their fears.

In an order dated March 22, 2012, the Family Court, inter alia, granted the petition for visitation to the extent of awarding the grandmother three hours of visitation with the children every other Sunday commencing on June 3, 2012, as well as such other visitation as to which the parties shall agree, and directed the mother, the children, and the grandmother to engage in therapy. The court also directed the grandmother and the children to communicate daily via email until visitation commenced.

On March 23, 2012, the same day the grandmother received a copy of the March 22, 2012, order, she sent an email to the mother informing her that she would be emailing the children daily starting that day, requesting that the mother direct the two older children to respond to the emails, and directing that either the mother or the two older children respond on behalf of the two younger children.

In May 2012, the mother moved to modify the order dated March 22, 2012, so as to delay the commencement of visitation until October 14, 2012. In her supporting affidavit, the mother averred that prior to the date visitation was scheduled to commence, the grandmother, without authorization, began attending the children's after-school and extracurricular activities. The mother stated that on one occasion, the grandmother showed up at one of the children's after-school activities and watched her through the windows of the gymnasium. The mother indicated that the child did not go to the bathroom because the grandmother was staring at her through the window next to the bathroom, and that the child had reported feeling "stalk[ed]." In addition, the mother asserted that the grandmother had contacted school officials and the children's coaches, and demanded inclusion on mailing lists relating to the children's schedules and activities. The mother maintained that the grandmother's conduct had caused the children distress, and had led to two of the children refusing to attend their little league baseball games. In a reply affidavit, the mother averred that on June 18, 2012, the grandmother and her husband showed up at the kindergarten graduation ceremony of one of the children, and, after the ceremony, each stood at opposite corners of the "party room" by the exit doors. The mother asserted that a security guard noticed what was happening, and escorted the mother and the child to a classroom where they remained during the party. In an order dated July 25, 2012, the Family Court denied the mother's motion. These appeals by the mother ensued.

A court determining a petition for grandparent visitation under Domestic Relations Law § 72 (1), must undertake a two-part inquiry. First, it must determine whether the grandparent has standing to petition for visitation rights based on the death of a parent or equitable circumstances (*see Matter of E.S. v P.D.*, 8 NY3d 150, 157 [2007]; *Matter of Gort v Kull*, 96 AD3d 842, 843 [2012]). If the court concludes that the grandparent has established the right to be heard, then it must determine if visitation is in the best interests of the child (*see Matter of E.S. v P.D.*, 8 NY3d at 157; *Matter of Wilson v McGlinchey*, 2 NY3d

375, 380 [2004]; *Matter of Steinhauser v Haas*, 40 AD3d 863, 864 [2007]). "[T]he courts should not lightly intrude on the family relationship against a fit parent's wishes" (*Matter of E.S. v P.D.*, 8 NY3d at 157). "Indeed, it is strongly presumed that a fit parent's decisions are in the child's best interests" (*Matter of Quinn v Heffler*, 102 AD3d 876, 876 [2013]; *see Matter of E.S. v P.D.*, 8 NY3d at 157; *Matter of Steinhauser v Haas*, 40 AD3d at 864).

In this case, the Family Court should have denied the grandmother's petition for visitation. The death of the children's father provided the grandmother with automatic standing to seek visitation (*see* Domestic Relations Law § 72 [1]; *Matter of Gort v Kull*, 96 AD3d at 843). Nevertheless, the Family Court improvidently exercised its discretion in granting the petition. The evidence in the record, including, inter alia, the mother's testimony, the report of Dr. Favaro, and the children's apprehension regarding visitation with the grandmother, established that visitation was not in the best interests of the children at the time the Family Court granted the petition (*see Matter of Quinn v Heffler*, 102 AD3d at 876; *Matter of Decoursy v Poplawski*, 61 AD3d 974 [2009]). Moreover, we note that on this appeal, the attorney for the children supports the denial of visitation.

Under the circumstances of this case, the Family Court erred in directing the mother to participate in therapy.

The mother's appeal from the order dated July 25, 2012, which denied her motion to delay the commencement of visitation until October 14, 2012, has been rendered academic in light of our determination on the appeal from the order dated March 22, 2012, and, in any event, because that date has already passed.

Finally, in light of our determination, we need not reach the mother's remaining contention. Skelos, J.P., Angiolillo, Roman and Cohen, JJ., concur.