*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 25, 2016                    520484
_____

In the Matter of DIANE VELEZ,
                    Appellant,

        v

JOHN R. WHITE et al.,
                    Respondents,
                    et al.,
                    Respondents.

(Proceeding No. 1.)
_____          MEMORANDUM AND ORDER

In the Matter of DIANE VELEZ,
                    Appellant,

        v

POLLY WHITE et al.,
                    Respondents.

(Proceeding No. 2.)
_____


Calendar Date:  January 7, 2016

Before:  Peters, P.J., Garry, Rose and Lynch, JJ.

                        _____


        Dennis B. Laughlin, Cherry Valley, for appellant.

        Guttman & Reiter, Ithaca (Charles Guttman of counsel), for
respondents.

        Robin Abrahamson Masson, Ithaca, attorney for the child.


                        _____

Garry, J.

Appeal from an order of the Family Court of Schuyler County (Morris, J.), entered January 23, 2015, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for visitation with the subject child.

Petitioner (hereinafter the grandmother) is the maternal grandmother of a child (born in 2006) whose parents are respondent Joseph D. White (hereinafter the father) and respondent Hillary Anne Sepulveda-Taylor (hereinafter the mother). The grandmother had de facto physical custody of the child for approximately two years, until child protective authorities removed the child in May 2013. Thereafter, neglect proceedings were commenced against the grandmother. Family Court granted temporary custody pursuant to Family Ct Act article 10 to the child's paternal grandparents, respondent John R. White and respondent Polly White, and issued a temporary order of protection directing the grandmother to stay away from the child and refrain from communication or contact with her. In December 2013, the court issued an order of fact-finding and disposition that, among other things, adjudicated the child to be neglected, granted supervised visitation to the grandmother and otherwise continued the order of protection. Apparently, little or no visitation occurred, as the parties were not able to agree upon an appropriate supervisor.

In February 2014, the grandmother commenced the first of these proceedings seeking custody of the child. Shortly thereafter, in a separate proceeding pursuant to Family Ct Act article 6 to which the grandmother was not a party, Family Court awarded custody of the child to the paternal grandparents upon the consent of the mother and father. The grandmother filed an amended petition seeking visitation, and then clarified that she was no longer seeking custody. Following a hearing, the court dismissed the grandmother's petitions, and she appeals.

In determining whether to award visitation to a grandparent over the objections of a child's parents or custodians, a court must first determine whether the grandparent has standing, and,

if so, then must decide whether visitation is in the child's best interests (see Domestic Relations Law § 72 [1]; Matter of E.S. v P.D., 8 NY3d 150, 156-157 [2007]; Matter of Rubel v Wilson, 111 AD3d 1065, 1067 [2013]).  Here, the threshold determination that the grandmother had standing, based upon the two-year period in which she had de facto custody of the child, is not in dispute. The grandmother contends that Family Court erred in the second step of the analysis, in determining that visitation was not in the child's best interests.  We find no error, and affirm.

The most significant consideration in rendering this determination is the nature and quality of the relationship between the grandparent and the child (see Matter of Burton v Barrett, 104 AD3d 1084, 1087 [2013]; Matter of Stellone v Kelly, 45 AD3d 1202, 1204 [2007]).  Other important factors include the grandparent's ability to nurture the child, his or her attitude towards the child's custodians, the reasons for the objections to visitation, the child's preference and the position taken by the attorney for the child (see Matter of Articolo v Grasso, 132 AD3d 1193, 1194 [2015]; Matter of Layton v Grace, 129 AD3d 1147, 1149 [2015]).

Here, as to the relationship between the child and the grandmother, the record supports Family Court's conclusions that the child had unresolved mental health issues related to the grandmother and that visitation posed a threat of emotional harm to the child.  Specifically, the child's therapist testified that she diagnosed the child with posttraumatic stress disorder arising from traumatic events that occurred while the child was residing with the grandmother, including repeated exposure to domestic violence as well as possible incidents of inappropriate sexual conduct in the child's presence.  The therapist testified that the child was further traumatized by dolls in the grandmother's home that, according to the child, were "evil" and were used to frighten the child.  The therapist said the child remained irrationally fearful of dolls, so that the therapist had to hide dolls in her office during the child's counseling sessions.  She stated that the child was showing improvement in therapy and recommended that no visitation occur until after the child had progressed further.  Other witnesses, including the mother and paternal grandparents, confirmed that the child had

frequently been exposed to verbal and physical altercations in the grandmother's home, that there were indications that she may have been exposed to sexual conduct, and that she was frightened of the grandmother's dolls. There was testimony that the grandmother had told the child that these dolls had spirits, and that the child believed that they haunted her at night.

With regard to the grandmother's ability to nurture the child, there was considerable testimony supporting Family Court's determination that the grandmother failed to understand the child's emotional needs. For example, although the grandmother acknowledged that the child had been exposed to domestic violence in her care — including an incident in which the child, then six years old, tried to separate two fighting adult men — the grandmother stated that she did not believe the child had experienced any trauma in her care, other than the removal from her home. There was also testimony describing the grandmother's difficulties in maintaining successful relationships and complying with the law. The grandmother described her troubled relationships with the child's mother and father, and acknowledged that she had recently pleaded guilty to petit larceny arising from a theft of cash from her ex-husband, although she denied that she had actually committed the theft. Family Court further found that the grandmother had knowingly violated the order of protection by taking the child to visit relatives in another county; during that visit, the child was again exposed to an incident of domestic violence, in which police were called. The mother testified that the grandmother had threatened that she would cause legal problems for the mother if the mother did not testify in favor of visitation for the grandmother, and the court found that making such threats was part of a pattern of behavior by the grandmother. As for the child's wishes, her therapist and a child protective caseworker testified that the child had mixed feelings, stating that she wanted some contact with the grandmother but did not want to stay overnight or have unsupervised contact. The attorneys for the child at the hearing and upon appeal both took the position that visitation with the grandmother would not be in the child's best interests.

The grandmother testified on her own behalf, describing her relationship with the child as "very good."  She acknowledged that the child had been exposed to domestic violence in her home and that she collected unusual-appearing dolls as part of her general interest in paranormal activity, but denied that the child had been frightened by the dolls or otherwise traumatized while in her care, or that the child had ever been exposed to sexual activity.  The grandmother's testimony revealed open hostility toward the paternal grandparents, who had custody of the child.  She acknowledged having once called a child protective hotline to report alleged violations by the paternal grandparents because she was frustrated at not having visits with the child; she believed that it was the responsibility of the paternal grandparents to identify an appropriate supervisor for her visits and to provide transportation.

Upon review, the record clearly reveals the grandmother's lack of insight into the child's needs and the reasons for her removal.  We thus find a sound and substantial basis in the record for Family Court's determination that visitation would not be in the child's best interests (see Matter of Albertina C. v Administration for Children's Servs., 125 AD3d 483, 484 [2015], lv denied 25 NY3d 906 [2015]; Matter of Pinsky v Botnick, 105 AD3d 852, 855 [2013]; Matter of Carolyn S. v Tompkins County Dept. of Social Servs., 80 AD3d 1087, 1091 [2011]; Matter of Wenskoski v Wenskoski, 266 AD2d 762, 763-764 [1999]).

Peters, P.J., Rose and Lynch, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court