Matter of Judith DD. v Ahava DD. (2019 NY Slip Op 03420)





Matter of Judith DD. v Ahava DD.


2019 NY Slip Op 03420


Decided on May 2, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 2, 2019

526653

[*1]In the Matter of JUDITH DD., Appellant,
v
AHAVA DD., Respondent.

Calendar Date: March 25, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Devine, JJ.


Gloria Marchetti-Bruck, White Plains, for appellant.
Betty J. Potenza, Highland, for respondent.
Daniel Gartenstein, Kingston, attorney for the children.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from an order of the Family Court of Ulster County (Savona, J.), entered March 22, 2018, which, in a proceeding pursuant to Family Ct Act article 6, granted a motion by respondent and the attorney for the children to dismiss the petition at the close of petitioner's proof.
Respondent (hereinafter the mother) is the mother of the three subject children (born in 2006, 2007 and 2011). The father committed suicide in June 2017 after federal investigators discovered photographic proof that he sexually molested the youngest child. In August 2017, petitioner, the paternal grandmother (hereinafter the grandmother), commenced this proceeding seeking visitation with the three children. After the grandmother rested her case at the hearing, the attorney for the children moved to dismiss the petition. The mother joined the motion. Family Court granted the motion and dismissed the petition, finding that it was not in the children's best interests to have visitation with the grandmother. The grandmother appeals. We affirm.
For a grandparent to obtain court-ordered visitation, the court must first find standing on a statutory basis, such as death of a parent, and then determine if visitation is in the children's best interests (see Domestic Relations Law § 72 [1]; Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]). When determining whether visitation is in the children's best interests, factors for courts to consider include the nature and quality of the relationship between the grandparent and the children, the grandparent's ability to nurture the children, his or her attitude toward the custodial parent, reasons for any objections to visitation and the children's preference (see Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1061 [2018]; Matter of Velez v White, 136 AD3d 1235, 1236 [2016]). "Courts should not lightly intrude on the family relationship against a fit parent's wishes, as the presumption that a fit parent's decisions are in the child's best interests is a strong one" (Matter of Vandenburg v Vandenburg, 137 AD3d 1498, 1499 [2016] [internal quotation marks, brackets and citations omitted]). "When deciding a motion to dismiss at the [*2]close of a petitioner's proof, the court must accept the petitioner's evidence as true and afford the petitioner every favorable inference that could reasonably be drawn from that evidence, including resolving all credibility questions in the petitioner's favor" (Matter of David WW. v Laureen QQ., 42 AD3d 685, 686 [2007]; see Matter of Mary BB. v George CC., 141 AD3d 759, 760 [2016]).
We reject the grandmother's argument that she was deprived of due process by Family Court's dismissal of the petition before the hearing was completed. The grandmother complains that she did not have an opportunity to hear testimony from the children's therapist or the mother, yet she did not call either of them as witnesses when she presented her own case. We cannot say that the court abused its discretion in denying the grandmother's request for mental health forensic evaluations of the parties and the children (see Matter of Yetter v Jones, 272 AD2d 654, 657 [2000]; Matter of Farnham v Farnham, 252 AD2d 675, 677 [1998]). The court did not abuse its discretion by not holding a Lincoln hearing, especially considering that no party requested one (see Matter of Burrell v Burrell, 101 AD3d 1193, 1195 [2012]; Matter of Farnham v Farnham, 252 AD2d at 677).
On the merits, the grandmother had standing because the father was deceased (see Domestic Relations Law § 72 [1]), leaving as the only contested issue whether visitation with the grandmother was in the children's best interests. Although, in the context of this motion, Family Court improperly made credibility determinations against the grandmother and her witnesses, the record supports the court's dismissal of the petition. The grandmother testified that she previously saw the children at large family gatherings and for a few hours once or twice a month when she would visit with them and the father. The grandmother testified that, when the mother first told her that the father sexually abused their daughter, the grandmother said she did not believe it and may have told the mother that she was making it up or coaching the child. The grandmother conceded that she had advised the mother, early in her marriage, to leave the father and go to a domestic violence shelter based on abuse, but she now believes that the mother instigated the violence against herself. When two of her own sons were sexually abused as children, the grandmother did not contact police or confront the abusers. In response to allegations of sexual abuse by one of her daughters against the grandmother and her husband, the grandmother said that her daughter was mentally ill; at least one of the grandmother's other children refused to allow her children to be alone with the grandmother in light of these allegations. When asked whether her family experienced more than the normal amount of sexual abuse, the grandmother — who had been a licensed marriage and family therapist until she retired in 2016 — stated that she did not know.
Although the grandmother now believes that the father sexually abused his daughter, she still believes that he was a good father even though, in her words, he did some bad things. She wants to tell the children that he was a good father and he loved them. She qualified that she would only do this if she talked to their therapist first but, when asked if she would still push for it if the therapist said she should not, the grandmother testified that she did not know. The grandmother repeatedly sought access to speak to the children's therapist for information about them. In contrast to her views of the father, the grandmother testified that the mother was, at least in some ways, a "terrible" mother because she missed some appointments.
When the grandmother called to speak to the children at one point after the father's death, the mother put the children on the phone and allowed them to talk to the grandmother. The grandmother did not recall whether she had asked the mother about visitation at that time. The grandmother did not try to call the children again or call the mother to ask how they were doing. At the father's burial, the grandmother said hello to the children but did not embrace them or otherwise comfort them. In later discussions, the mother offered the grandmother visits in the office of the children's therapist or supervised by the mother, but the grandmother rejected those offers; the grandmother wanted overnight visits alone with the children at her residence in Connecticut. Notably, the record indicates that the children had never been left alone with her before. Despite having spent time with the children, she was unaware that the 12-year-old child was on the autism spectrum and needed special attention. The grandmother was 85 years old, did [*3]not drive, received personal assistance herself, had trouble walking and acknowledged that the children are active, but wanted to visit alone. When asked about the children's need for therapy to address the trauma they experienced, the grandmother mentioned only their father's suicide; she did not mention the sexual abuse he had committed against the youngest child.
The other witnesses testified regarding the grandmother's previous interactions with the children and they saw no reason why she should not have visitation, though none of them had ever seen her with the children without at least one parent present. Even accepting the grandmother's evidence as true, giving her every favorable inference that can reasonably be drawn from the evidence and resolving credibility in her favor, the evidence indicated that the grandmother was hostile to the mother, she had never watched the children by herself and she did not seem equipped to appropriately deal with these three young children. This record supports a determination that it is not in the children's best interests for them to have visitation with the grandmother (see Matter of Wendy KK. v Jennifer KK., 160 AD3d at 1061; Matter of Vandenburg v Vandenburg, 137 AD3d at 1499-1500; Matter of Velez v White, 136 AD3d at 1236; Matter of Articolo v Grasso, 132 AD3d 1193, 1194-1195 [2015]).
Egan Jr., J.P., Lynch, Clark and Devine, JJ., concur.
ORDERED that the order is affirmed, without costs.