Matter of Virginia HH. v Elijah II. (2022 NY Slip Op 06970)

Matter of Virginia HH. v Elijah II.

2022 NY Slip Op 06970

Decided on December 8, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 8, 2022

533234
[*1]In the Matter of Virginia HH., Respondent, et al., Petitioner,
v
Elijah II. et al, Appellants.

Calendar Date:October 19, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Larisa Obolensky, Delhi, for Elijah II., appellant.
Lisa K. Miller, McGraw, for Melanie II., appellant.
Virginia HH., Friendsville, Pennsylvania, respondentpro se.
Andrea J. Mooney, Ithaca, attorney for the children.

Ceresia, J.
Appeal from an order of the Family Court of Broome County (Mark H. Young, J.), entered March 31, 2021, which granted petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondents' children.
Respondent Elijah II. (hereinafter the father) and respondent Melanie II. (hereinafter the mother) are the divorced parents of a son and a daughter (born in 2015 and 2018, respectively). Petitioner Virginia HH. (hereinafter the grandmother) and petitioner Leonard HH. are the children's maternal grandparents. In September 2019, the grandparents filed a petition for visitation with the children. A hearing was held in November 2020 and January 2021, after which Family Court issued an order granting the petition and directing a schedule of visits of increasing duration, culminating in the grandparents having visitation at their home with the children for one full weekend each month. The mother and the father separately appeal.
Preliminarily, we find that the grandparents established standing to seek visitation with the daughter.[FN1] "For a grandparent to obtain court-ordered visitation, the court must first find standing on a statutory basis" (Matter of Judith DD. v Ahava DD., 172 AD3d 1488, 1488 [3d Dept 2019]; see Domestic Relations Law § 72 [1]; Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; Matter of Velez v White, 136 AD3d 1235, 1236 [3d Dept 2016]). Where, as here, the parents are living, the grandparents must show "a sufficient existing relationship with their grandchild[ren], or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Anne MM. v Vasiliki NN., 203 AD3d 1476, 1479 [3d Dept 2022] [internal quotation marks and citation omitted]; see Matter of Vandenburg v Vandenburg, 137 AD3d 1498, 1498 [3d Dept 2016]). "In the latter situation, the grandparents must demonstrate that they did everything possible under the circumstances to establish a relationship with their grandchildren" (Matter of Couse v Couse, 72 AD3d 1231, 1232 [3d Dept 2010] [citation omitted]; see Matter of Carol E. v Robert E., 183 AD3d 1154, 1155 [3d Dept 2020]).
There was evidence at the hearing that at the time of the daughter's birth, the mother and the father were still married and living together. During the daughter's infancy, the grandparents saw her approximately every other Sunday when the entire family would gather for dinner, and the grandparents also celebrated with the family on special occasions such as holidays. After the parents ceased the visits with the grandparents when the daughter was about a year and a half old, the grandmother made numerous attempts to contact the children through telephone calls, text messages and emails, and also sent them a number of packages. Under these circumstances, we are satisfied that the grandparents established a sufficient relationship with the daughter for the purpose [*2]of demonstrating standing (see Matter of Anne MM. v Vasiliki NN., 203 AD3d at 1480; Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1453 [3d Dept 2021]; Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1026 [3d Dept 2020]).
However, we further find that Family Court's award of visitation to the grandparents lacks a sound and substantial basis in the record (see Matter of Anne MM. v Vasiliki NN., 203 AD3d at 1481; cf. Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1061 [3d Dept 2018]). In undertaking a best interests analysis, the nature and quality of the grandparents' relationship with the children is again the primary concern, and "[o]ther important factors include the grandparent[s'] ability to nurture the child[ren], [their] attitude towards the child[ren]'s custodians, the reasons for the objections to visitation, the child[ren]'s preference and the position taken by the attorney for the child[ren]" (Matter of Velez v White, 136 AD3d at 1236). Fundamentally, "courts should not lightly intrude on the family relationship against a fit parent's wishes. The presumption that a fit parent's decisions are in the child's best interests is a strong one" (Matter of E.S. v P.D., 8 NY3d at 157).
In granting visitation to the grandparents, Family Court essentially based its determination on its belief that the son would benefit from frequent contact with family members who love him, and that "equity demand[ed]" that the daughter have the same level of visitation. While contact with loving family members is certainly a laudable goal for these and any other children, the record does not support the court's finding that the children's best interests would be served by visitation with the grandparents. Indeed, to the contrary, the mother and the father, who were separated as of the time of the hearing but were united in their opposition to the grandparents' visitation petition, offered testimony detailing the negative effects that visitation with the grandparents had on the son.
The father testified that the son is autistic and has ADHD, which results in him having difficulty with transitions and changes in environment, and that the son is prone to "meltdowns" causing him, at times, to hit himself or cry until he throws up. According to the father, when the son was in the grandparents' care and had a meltdown, they "couldn't figure out what to do and then they basically gave him what he wanted," which was not in accordance with the father's approach. The father also testified that the son had multiple severe meltdowns after participating in video calls with the grandparents, which the mother confirmed. The father explained that he and the mother decided to discontinue visits with the grandparents upon discovering a fist-sized bruise on the son's chest shortly after the son had visited the grandparents.
It was the mother's testimony that the son got upset when the grandmother told him during video calls to "ask Mommy and Daddy when you can come over[*3]," and after one such call he hit himself so hard in the face that he broke his glasses, while after a subsequent call he began ripping apart his bedroom wall. In addition, the mother testified that the grandmother undermined her authority in front of the children and told her, while in the children's presence, that she did not deserve to be a mother.
In addition to the parents' testimony, the director of the son's preschool testified that transitions are very difficult for him and he typically has three or four meltdowns per day, the length of which at times has exceeded 45 minutes. Also introduced into evidence was a preschool evaluation report for the son, which noted that "[h]e will need consistency across all settings and active communication about his functioning between all caregivers, at school and at home."
We are mindful that the grandparents testified about their desire to spend time with the children and provide vacations and activities for them. The grandparents also indicated that they have bedrooms for the children and toys for them to play with. However, in our view, the son's difficulties that manifest upon transitions in general, and interactions with the grandparents in particular, were not properly taken into account by Family Court.
Also worth noting is what appears to be the significant tension between the parents and the grandparents. Although this dynamic was made clear through the parties' hearing testimony, the acrimony on the part of the grandmother is further evident in her pro se appellate brief, which, though replete with statements of fact that are outside the record and therefore will not be considered (see Matter of Amber B. v Scott C., 207 AD3d 847, 849 n 2 [3d Dept 2022]), is nevertheless concerning for its combative tone regarding the parents. It is true that such animosity, alone, is not an adequate basis to deny visitation (see Matter of Vandenburg v Vandenburg, 137 AD3d at 1500). That said, Family Court does not appear to have considered the animosity in this case, and, more importantly, its potential impact upon the ability of the parents and grandparents to cooperatively care for the children and especially for the son, given his unique set of challenges.
In light of the foregoing, Family Court improperly determined that the grandparents surpassed the "high hurdle" created by "the strong presumption that the parent[s'] wishes represent the child[ren]'s best interests" (Matter of E.S. v P.D., 8 NY3d at 160; see Matter of Vandenburg v Vandenburg, 137 AD3d at 1499-1500). In so holding, we observe that the appellate attorney for the children opposes court-ordered visitation, believing that the better course would be visitation with the grandparents as the parents agree. Incidentally, we note that, in addition to the above infirmities, the court's award of one full weekend every month unduly deprives the mother, who only sees the children on the weekends, of significant time with them (see Matter of Anne [*4]MM. v Vasiliki NN., 203 AD3d at 1481; Matter of Dubiel v Schaefer, 108 AD3d 1093, 1095 [4th Dept 2013]).
Inasmuch as there was no attorney for the children assigned to represent their interests at the hearing, and further noting that over a year and a half has passed since the entry of Family Court's order — a significant passage of time in the lives of these young children — we find it prudent to remit this matter for a new hearing before a different judge, with the appointment and participation of an attorney for the children (see Matter of Gerard P. v Paula P., 186 AD3d 934, 939 [3d Dept 2020]; Matter of Marina C. v Dario D., 177 AD3d 1228, 1230 [3d Dept 2019]). Pending the outcome of that hearing, the court's order granting visitation to the grandparents is no longer in effect, such that any visitation with the grandparents is to be conducted only upon the express mutual consent of both parents.
Egan Jr., J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the facts, without costs, and matter remitted to the Family Court of Broome County for further proceedings before a different judge not inconsistent with this Court's decision.

Footnotes

Footnote 1: The parents stipulated to standing with respect to the son.