Matter of Daniel RR. v Heather RR. (2023 NY Slip Op 06011)

Matter of Daniel RR. v Heather RR.

2023 NY Slip Op 06011

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

534609 534610
[*1]In the Matter of Daniel RR., Petitioner,
v
Heather RR., Appellant, et al., Respondent. (And Another Related Proceeding.)

Calendar Date:October 13, 2023

Before:Egan Jr., J.P., Clark, Ceresia, McShan and Powers, JJ.

Cheryl L. Sovern, Malta, for appellant.
Vicki J. Prager, Northville, attorney for the child.
Nicole R. Rodgers, Saratoga Springs, attorney for the child.

Egan Jr., J.P.
Appeals from two orders of the Family Court of Montgomery County (Philip V. Cortese, J.), entered August 26, 2021, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, for visitation with the subject children.
Respondent Heather RR. (hereinafter the mother) is the mother of two children (born in 2008 and 2012). Petitioner (hereinafter the grandfather) is the maternal grandfather of the children, and, in June 2019, he commenced proceedings seeking, in relevant part, visitation with them. Upon the mother's default, Family Court issued two orders in March 2020 that awarded the grandfather visitation that included an overnight visit with the children on alternate weekends during the school year, as well as an overnight visit during the week and two longer vacations during the summer.
The mother moved, by order to show cause, to vacate the orders of visitation and reopen her default in December 2020. Family Court issued a January 2021 order in which it, among other things, denied that motion because the mother had not demonstrated a reasonable excuse for her default.[FN1] Family Court noted that it had erred in failing to conduct a best interests hearing upon the mother's default, however, and accordingly scheduled an inquest on that issue and directed that the March 2020 orders remain in effect on a temporary basis. The mother failed to appear at the inquest, but her attorney was present and cross-examined the grandfather, who was the sole witness. Family Court thereafter issued two orders in August 2021 finding that it was in the best interests of each child to have visitation with the grandfather and awarding him the same visitation as that set forth in the March 2020 orders. The mother appeals.[FN2]
Initially, Family Court determined in its January 2021 order, and we agree, that the grandfather had established "a sufficient existing relationship with" the children to afford him standing to seek visitation (Matter of Emanuel S. v Joseph E., 78 NY2d 178, 182 [1991]; see Domestic Relations Law § 72 [1]; Matter of Virginia HH. v Elijah II., 211 AD3d 1201, 1202-1203 [3d Dept 2022]). We accordingly turn to a best interests analysis where "[t]he most significant consideration . . . is the nature and quality of the relationship between the grandparent and the child[ren]," with other key factors being "the grandparent's ability to nurture the child[ren], his or her attitude towards the child[ren]'s custodians, the reasons for the objections to visitation, the child[ren]'s preference and the position taken by the attorney[s] for the child[ren]" (Matter of Velez v White, 136 AD3d 1235, 1236 [3d Dept 2016]; see Matter of Virginia HH. v Elijah II, 211 AD3d at 1202-1203; Matter of Anne MM. v Vasiliki NN., 203 AD3d 1476, 1480 [3d Dept 2022]). We are mindful that, in making that assessment, there is a presumption that a fit parent's decisions are in the best interests of a child and courts should therefore tread lightly in [*2]intruding upon a parent's decision with regard to family relationships (see Matter of Virginia HH. v Elijah II, 211 AD3d at 1202-1203; Matter of Carol E. v Robert E., 183 AD3d 1154, 1155 [3d Dept 2020]).
At the inquest, the grandfather acknowledged that he had an alcohol problem decades earlier, but that he had been sober since 1991, and he testified that alcohol has never impacted his relationship with the children. He further made clear that he had been very involved in the lives of both children since they were born and, indeed, that they and the mother had resided with him for extended periods from the births of the children through 2017. He also detailed how he was one of the primary caregivers for the children when they lived with him, assisting the children with homework and transporting them to school and to extracurricular activities. The grandfather went on to describe how he enjoyed regular visitation with the children during the periods that the mother had her own residence, and how he consistently assisted the children by buying Christmas gifts, clothes and food for them. He also stated that the mother abruptly refused to allow him to see the children following a 2018 argument between the mother and the maternal great-grandmother — who assisted in caring for the children — with which he had no involvement. The grandfather finally testified that he continued to enjoy a good relationship with both the children and respondent Fred SS., the father of the older child, and he detailed how the visits with the children following the 2020 orders had gone well and how the children seemed to have fun during them. It is further notable that the appellate attorneys for the children represent that their clients want to spend time with the grandfather and argue that the orders should be affirmed.
The foregoing reflects that the grandfather has consistently played a significant and positive role in the lives of the children, that the children want to see him and that the only barrier to such occurring is the mother's distaste for him. "[A]n acrimonious relationship [between a parent and a grandparent] is generally not sufficient cause to deny visitation" and, according deference to Family Court's implicit assessment that the grandfather's testimony as to his relationship with the children was credible, we therefore perceive a sound and substantial basis for its determination that visitation is in the best interests of the children (Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1453 [3d Dept 2021]; see Matter of Carol E. v Robert E., 183 AD3d at 1155-1156; Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1328-1329 [3d Dept 2019], lv denied 34 NY3d 909 [2020]).
Finally, although we perceive no reason to disturb the specified visitation awarded by Family Court, we do agree with the mother that Family Court improperly granted the grandfather and the father of the older child sole authority to determine the dates for at least four consecutive days of [*3]visitation in the months of July and August. Allowing the grandfather and the father of the older child to determine periods of summer visitation for the children without the agreement of the mother, the custodial parent, constitutes "an improper delegation of authority" (Matter of Matthew E. v Laura E., 192 AD3d 1341, 1343 [3d Dept 2021]; see Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1306 [3d Dept 2017]; Matter of Nicolette I. [Leslie I.], 110 AD3d 1250, 1255 [3d Dept 2013]). In view of the sparse state of the record, as well as the passage of time since the entry of the orders on appeal, we remit solely for the purpose of Family Court setting a schedule for the summer visitation.
Clark, Ceresia, McShan and Powers, JJ., concur.
ORDERED that the orders are modified, on the law, without costs, by reversing so much thereof as provided petitioner additional summer visitation as agreed upon by him and respondent Fred SS.; matter remitted to the Family Court of Montgomery County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Family Court also dismissed a separate modification petition filed by the mother.

Footnote 2: Although the mother would have been unable to take an appeal from the March 2020 orders entered upon her default, a defaulting party is still free to seek "review . . . of the proceedings on a contested inquest" (James v Powell, 19 NY2d 249, 256 n 3 [1967]; see Matter of DiNunzio v Zylinski, 175 AD3d 1079, 1080 [4th Dept 2019]). Counsel for the mother appeared at the inquest that led to the appealed-from orders, offered no objection to it occurring, and actively participated in it by cross-examining the grandfather. Family Court, moreover, did not hold the mother to have defaulted in appearance at the inquest. In view of those facts, we conclude that the mother did contest the inquest and that she may appeal from the ensuing orders (see e.g. Matter of Amanda I. v Michael I., 185 AD3d 1252, 1253-1254 [3d Dept 2020]).