Matter of Dianne SS. v Jamie TT. (2025 NY Slip Op 01023)

Matter of Dianne SS. v Jamie TT.

2025 NY Slip Op 01023

Decided on February 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 20, 2025

CV-23-1659
[*1]In the Matter of Dianne SS., Respondent,
v
Jamie TT., Appellant, et al., Respondent. (And Another Related Proceeding.)

Calendar Date:January 8, 2025

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Whiteman Osterman & Hanna LLP, Albany (Brian J. Palamar of counsel), for appellant.
Leslie W. Ryan, Fort Edward, for Dianne SS., respondent.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the children.

Fisher, J.
Appeal from an order of the Family Court of Washington County (Adam Michelini, J.), entered August 3, 2023, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, for visitation with respondents' child.
Respondent Jamie TT. (hereinafter the mother) is the mother of two children (born in 2018 and 2020). Petitioner (hereinafter the grandmother) is the maternal grandmother of the children and, in July 2022, she commenced this proceeding seeking visitation after the mother blocked contact between the grandmother and the children. Following a fact-finding hearing, Family Court granted the grandmother visitation. The mother appeals.
We affirm. When a grandparent seeks visitation, a court must initially find standing based on the death of a parent or equitable circumstances, and if the court concludes that the grandparent has established the right to be heard, then it must determine if visitation is in the best interests of the grandchildren (see Domestic Relations Law § 72 [1]; Matter of Velez v White, 136 AD3d 1235, 1236 [3d Dept 2016]). When the parents are living, standing is established if the grandparent demonstrates "a sufficient existing relationship with [his or her] grandchild[ren], or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Anne MM. v Vasiliki NN., 203 AD3d 1476, 1479 [3d Dept 2022] [internal quotation marks and citations omitted]). If a parent has "precluded a relationship, the grandparent's efforts to establish one must be measured against what he or she could reasonably have done under the circumstances" (Matter of Carol E. v Robert E., 183 AD3d 1154, 1155 [3d Dept 2020] [internal quotation marks, ellipsis, brackets and citation omitted]). To that end, the "essential components of the standing inquiry are the nature and extent of the grandparent-grandchild relationship and the nature and basis of the parent's objection to visitation" (Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1327 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 909 [2020]).
Here, evidence from the fact-finding hearing demonstrated that the grandmother had a sufficient relationship with each child before the mother ended face-to-face contact in December 2021 and all contact in March 2022. Specifically, the testimony showed that the grandmother was present at the hospital for the birth of the older child and met the younger child shortly after the child returned home from the hospital in 2020,[FN1] during which time the grandmother assisted with the care of both children and saw them on a weekly or monthly basis.[FN2] The grandmother also lived with the mother and the older child on two separate occasions; first, for a period of approximately seven or eight months, and again after the younger child was born, when all four of them lived together for approximately [*2]two or three months. During this time, the grandmother provided assistance with the care and supervision of both children — including by paying a significant majority of the rent. Outside of the periods of time where they were sharing an apartment together, it is further undisputed that the grandmother had unsupervised time with the children to babysit them, care for their needs, bring them to activities, and had assisted the mother with transporting the children from daycare on several occasions. Even after the mother told the grandmother that she did not want her to see the children anymore, the grandmother still made efforts to continue her relationship with the children by delivering birthday gifts, cake and holiday gifts/cards for the mother and the children, which was rebuked by the mother, who called the police on the grandmother.
Although the record partially supports the mother's contention that, when they were living in a shared apartment, the grandmother had instead spent a significant period of time living at a second location, we conclude that the basis for the mother's objection to the grandmother being awarded visitation is not supported in the record. To that point, the mother's contention that the grandmother had sexually abused the older child on one occasion was never reported to the police — even though the mother had proven to be quick in calling law enforcement after the grandmother left gifts on the porch. But even after the mother allegedly witnessed the abuse, the record further reveals that the mother still permitted unsupervised contact between the grandmother and the children on numerous occasions before she finally ended all contact. Tellingly, the mother's sister and cousin testified that the mother had also ended all contact between them and the children in a similar fashion, and also for no apparent reason, during the same time period when the mother was ending contact with the grandmother. It was further not unnoticed by Family Court that, in between the first and second day of the fact-finding hearing, after which the paternal grandfather had testified in support of the grandmother, the mother had then asserted new allegations of sexual abuse involving the paternal grandfather and the father of the older child — which were determined to be unfounded.[FN3] Under these circumstances, we are satisfied that Family Court carefully evaluated the relationship between the grandmother and the children, as well as the basis for the mother's objection, and properly determined that the grandmother had standing to seek visitation of the children (see Virginia HH. v Elijah II., 211 AD3d 1201, 1202 [3d Dept 2022]; Matter of Anne MM. v Vasiliki NN., 203 AD3d at 1480; Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1453 [3d Dept 2021]; Matter of Susan II. v Laura JJ., 176 AD3d at 1328).
Once the threshold issue of standing is satisfied, a court must "turn to a best interests analysis where the most significant consideration is the nature [*3]and quality of the relationship between the grandparent and the children, with other key factors being the grandparent's ability to nurture the children, his or her attitude towards the children's custodians, the reasons for the objections to visitation, the children's preference and the position taken by the attorney[ ] for the children" (Matter of Daniel RR. v Heather RR., 221 AD3d 1301, 1302 [3d Dept 2023] [internal quotation marks, brackets, ellipsis and citation omitted]). In conducting such review, we recognize that, "although there is a presumption that a fit parent's decisions are in the best interests of [the] child[ren], neither the presumed wishes of the child[ren] nor the existence of animosity between the parent and the grandparent is a proper reason for denial of visitation in isolation" (Matter of Marilyn Y. v Carmella Z., 230 AD3d 1402, 1403 [3d Dept 2024] [internal quotation marks and citations omitted]). "Finally, Family Court has broad discretion in determining an appropriate visitation schedule, and its findings in that regard are entitled to great deference unless they lack a sound and substantial basis in the record" (Matter of Melissa X. v Javon Y., 200 AD3d at 1454 [internal quotation marks and citations omitted]).
We find that the testimony established the grandmother to be nothing other than a fit grandparent who had an appropriate, positive and loving relationship with her grandchildren. Her testimony demonstrated regular and continuous contact with the children from birth until the mother blocked contact, including taking them on outings, caring for them and celebrating holidays with them. Other witnesses testified to the grandmother's relationship with the children, including her demeanor and interactions with them, and confirmed that they had not observed any concerning conduct. This included the grandmother's other daughter, who maintained that the grandmother had been watching her children for almost 20 years and that she never had any concerns over the grandmother's ability or behavior around her children. The mother's opposition to visitation and the animosity in their relationship is largely based on the allegations that the grandmother had sexually abused the mother as a child and allowed several individuals that the grandmother was dating to sexually abuse or harass her as she was growing up. According to the mother, the grandmother continued to engage in controlling behavior with her regarding each of the children, and further had sexually abused the older child. As a result of the grandmother's inappropriate conduct, the mother contends that she has been receiving professional services from a counselor for the last couple of years. The grandmother denied the mother's allegations, which were ultimately discredited by Family Court.
Having accorded great deference to Family Court's findings and credibility determinations, we conclude that, despite the animosity between the mother and the grandmother, because the [*4]testimony established that there was a loving and appropriate relationship between the grandmother and the children, and the mother's objection to visitation was based on unreported allegations of abuse — with the record containing other subsequent allegations by the mother of sexual abuse that were determined to be unfounded — Family Court's determination that visitation with the grandmother is in the best interests of the children has a sound and substantial basis in the record (see Matter of Marilyn Y. v Carmella Z., 230 AD3d at 1405; Matter of Daniel RR. v Heather RR., 221 AD3d at 1303; Matter of Deborah Z. v Alana AA., 185 AD3d 1174, 1177-1178 [3d Dept 2020]). Although Family Court was faced with substantial and conflicting testimony, the underlying theme common to all witnesses was that the mother severed contact between them and the children for no apparent reason. Such position is supported by the attorney for the children, who further contends that Family Court was in the best position to evaluate the evidence and the credibility of the witnesses, and its findings should not be disturbed. We further perceive no reason to disturb the specified visitation schedule awarded by Family Court (see Matter of Melissa X. v Javon Y., 200 AD3d at 1454; Matter of Deborah Z. v Alana AA., 185 AD3d at 1178; Matter of Susan II. v Laura JJ., 176 AD3d at 1329).
Lastly, the mother contends that she was denied her right to the effective assistance of counsel when her trial counsel failed to call her mental health counselor, to whom she purportedly disclosed her history of sexual abuse by the grandmother.[FN4] We are not persuaded. In order "to successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Carly W. v Mark V., 225 AD3d 984, 987 [3d Dept 2024] [internal quotation marks and citations omitted]). "However, the failure to call [a] particular witness[ ] does not necessarily constitute ineffective assistance of counsel" (Matter of Madelyn V. [Lucas W.-Jared V.], 199 AD3d 1249, 1252 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 901 [2022]), and, since "it is not the role of this Court to second-guess counsel's trial strategy or tactics, a party seeking to prevail on an ineffective assistance of counsel claim must do something more than engage in hindsight speculation as to the viability of counsel's strategy" (Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010-1011 [3d Dept 2018] [internal quotation marks and citations omitted]). Therefore, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, [a parent's] constitutional right to the effective assistance of counsel will have been met" (Matter of Jacklyn PP. v Jonathan QQ., 221 [*5]AD3d 1293, 1298 [3d Dept 2023] [internal quotation marks and citations omitted]).
Here, the mother fails to demonstrate how her trial attorney's failure to call her mental health counselor was the result of a lack of a legitimate trial strategy. Although it may have been helpful for trial counsel to bolster the mother's sexual abuse allegations by calling the counselor, this would not have solved the credibility problems that the mother faced on this issue. Significantly, the mother testified that — despite allegedly being the victim of sexual abuse from the age of four or five until her early 20s — she continued to allow her alleged abuser to have unsupervised contact with the children, even after she purportedly witnessed the grandmother sexually abuse the older child. Indeed, none of the neutral witnesses raised any concerns regarding how the grandmother interacted with the children or her other grandchildren, and calling the counselor may have only drawn further unwanted attention to this issue. This is particularly true after the mother's subsequent allegations of sexual abuse against the paternal grandfather and the father, newly raised between the first and last days of the fact-finding hearing, were determined to be unfounded. In further view of the record, which reflects that the mother's attorney made cogent opening and closing statements, raised numerous and vigorous objections during the hearing that were supported by viable legal arguments, and that she aggressively cross-examined witnesses — including the grandmother, who conceded several detrimental points to her position — we are satisfied that the mother received the effective assistance of counsel (see Matter of Madelyn V. [Lucas W.-Jared V.], 199 AD3d at 1252-1253; Matter of Audreanna VV. v Nancy WW., 158 AD3d at 1010-1011; see also Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d at 1298-1299). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The testimonial evidence was clear that the grandmother was not present for the delivery of the younger child because she was watching the older child while the mother was in the hospital, which had established certain health and safety protocols due to the COVID-19 pandemic.

Footnote 2: Although there was testimony that the grandmother saw the older child at least weekly, if not multiple times per week, other testimony indicated that she saw the younger child less frequently — which was partially attributed to the COVID-19 pandemic.

Footnote 3: According to the mother, she called the police and reported these allegations, which resulted in a forensic interview with a staff member from child protective services and a separate evaluation by the child's pediatrician. Although the mother initially testified that she was not aware of the outcome of this report, she admitted on cross-examination that she had received correspondence stating that the report was unfounded.

Footnote 4: We decline the mother's invitation to consider the mental health counselor's letter, which was not proffered before Family Court and is therefore dehors the record, but rather was submitted as an exhibit before this Court in the mother's motion for a stay of the order (see Gintell v Coleman, 136 AD2d 515, 516 [1st Dept 1988]; see also Sleasman v Sherwood, 212 AD2d 868, 870 [3d Dept 1995]).