Matter of Shirley XX. v Molly YY.
2026 NY Slip Op 03484
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Shirley XX., Respondent-Appellant,
v
Molly YY., Appellant- Respondent, et al., Respondent. Attorney for the Child, Appellant- Respondent.

Decided and Entered:June 4, 2026
CV-24-1728
Calendar Date: April 23, 2026
Before: Clark, J.P., Aarons, Pritzker, Mcshan And Ryba, JJ.

Kelley M. Enderley, Poughkeepsie, for Molly YY., appellant-respondent.
Betty J. Potenza, Milton, attorney for the child, appellant-respondent.
Bousquet Holstein PLLC, Syracuse (Ryan S. Suser of counsel), for respondent-appellant.

[*1]
Clark, J.P.
Appeal from an order of the Family Court of Tompkins County (Matthew Hayden, J.), entered September 12, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with the subject child.
Respondent Molly YY. (hereinafter the mother) is the mother of the subject child (born in 2013). Petitioner Shirley XX. (hereinafter the grandmother) is the child's maternal grandmother, who has played a substantial caretaking role in the child's life. In October 2014, the grandmother moved by order to show cause for visitation with the child. She was awarded a temporary visitation schedule during the pendency of the proceeding amounting to 16 hours per week and one overnight per month. That proceeding was ultimately resolved in July 2015, when Family Court (Morris, J.) issued an order on consent that awarded the mother sole legal and physical custody of the child, with the grandmother granted one 24-hour period of visitation per week.
In July 2018, the grandmother and the mother sent a notarized letter to Family Court seeking termination of the July 2015 visitation order on the basis that it was no longer necessary. In the letter, both parties agreed that it was "best for [the child]" to continue to have visitation with the grandmother given their "strong bond," but requested "the opportunity to heal and move forward from the Family Court system." In accordance with such sentiment, the mother thereafter formally petitioned to terminate the grandmother's visitation, which was granted in November 2018.
The relationship between the grandmother and the mother subsequently deteriorated and, in January 2022, the grandmother filed another petition for visitation with the child alleging, among other things, that the mother had abruptly restricted her contact with the child and raising a concern that "such an extreme and abrupt" reduction in visitation would negatively impact the child. The January 2022 proceeding was subsequently resolved by stipulation of the parties, with the grandmother agreeing to withdraw her petition and the mother consenting to a set visitation schedule for the grandmother which included multiple overnights per month and a full week during the summer. The parties followed that schedule for a period of time, but their relationship subsequently broke down again and, by the fall of 2023, the mother had placed restrictions on the grandmother's contact with the child. This prompted the grandmother to commence the instant proceeding seeking an order of visitation.
Following a fact-finding hearing and Lincoln hearings with the child, Family Court (Hayden, J.) issued a 41-page decision that, as relevant here, granted the grandmother visitation with the child on a limited basis.FN1 In so doing, the court first determined that the grandmother had standing to seek visitation with the child under Domestic Relations Law § 72 by virtue of her substantial caretaking role and consistent presence in the child's [*2]life. As for its finding that court-ordered visitation with the grandmother was in the child's best interests, the court recognized that it was "required to provide a fit parent the presumption that [his or] her parenting decisions are in the best interest[s] of [his or her] child." However, the court expressed concern about the mother's choice to expose the child to her animus toward the grandmother, which it found had influenced the child's relationship with the grandmother and was a source of the child's "overwhelming" stress. The court further determined that the child's position had been "pressured, coached, or encouraged" by the mother and her husband and that the mother's stated rationale for cutting off visitation with the grandmother — i.e., due to the child's alleged desire not to have contact — was "pretextual" and "born[e] out of [the mother]'s own complicated history" with the grandmother. Emphasizing that the grandmother had played a substantial role in the child's life and was a nurturing and loving resource, the court found that the mother's anger at the grandmother did not "provide a valid basis for [her] to seek to cut off all visitation" with the child, whose best interests would be served by continuing to visit with the grandmother. The mother and the child separately appeal, and the grandmother cross-appeals.FN2
Initially, contrary to the mother's contention, Family Court properly concluded that the grandmother established standing to petition for visitation with the child. In circumstances where a child's parents are alive, grandparents may obtain standing to seek visitation with their grandchildren when they "can establish circumstances in which equity would see fit to intervene" (Matter of Emanuel S. v Joseph E., 78 NY2d 178, 181 [1991]; see Domestic Relations Law § 72 [1]).For grandparents to have standing under the equitable circumstances prong of Domestic Relations Law § 72 (1), they "must establish a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Emanuel S. v Joseph E., 78 NY2d at 182; accord Matter of Ferguson v Weaver, 165 AD3d 1397, 1397-1398 [3d Dept 2018]; see Matter of Daniel RR. v Heather RR., 221 AD3d 1301, 1302 [3d Dept 2023]). Here, the grandmother readily established standing to seek visitation with the child by virtue of her substantial and prolonged caretaking role in the child's life from birth until the commencement of this proceeding. Moreover, the child was previously closely bonded with the grandmother and the grandmother has made considerable efforts to maintain a relationship with the child despite the mother's restrictions (see Matter of Vandenburg v Vandenburg, 137 AD3d 1498, 1499 [3d Dept 2016]; compare Matter of Couse v Couse, 72 AD3d 1231, 1232 [3d Dept 2010]).
Having established standing, the question becomes [*3]whether Family Court's determination that visitation with the grandmother was in the child's best interests has a sound and substantial basis in the record.FN3 "We are mindful that, in making that assessment, there is a presumption that a fit parent's decisions are in the best interests of a child and courts should therefore tread lightly in intruding upon a parent's decision with regard to family relationships" (Matter of Daniel RR. v Heather RR., 221 AD3d at 1302-1303 [citations omitted]). However, " 'neither the presumed wishes of the child nor the existence of animosity between the parent and the grandparent[ ] is a proper reason for denial of visitation' in isolation" (Matter of Articolo v Grasso, 132 AD3d 1193, 1194 [3d Dept 2015], quoting Matter of Johansen v Lanphear, 95 AD2d 973, 974 [3d Dept 1983]; see Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]). Rather, the "inquiry must assess a variety of factors, including 'the nature and extent of the existing relationship between the grandparent and child[,] . . . the basis and reasonableness of the parent's objections, the grandparent's nurturing skills and attitude toward the parent, the [attorney for the child's] assessment and the child's wishes' " (Matter of Articolo v Grasso, 132 AD3d at 1194, quoting Matter of Stellone v Kelly, 45 AD3d 1202, 1204-1205 [3d Dept 2007]; accord Matter of Vandenburg v Vandenburg, 137 AD3d at 1499; see Matter of E.S. v P.D., 8 NY3d at 157-158). Family Court's credibility determinations and factual findings are entitled to great weight on appeal, and its determination to award grandparent visitation will not be disturbed by this Court so long as it has a sound and substantial basis in the record (see Matter of Dianne SS. v Jamie TT., 235 AD3d 1138, 1141 [3d Dept 2025]; Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1453 [3d Dept 2021]).
Here, the record supports Family Court's determination that the mother's objection to visitation was based primarily upon her anger toward the grandmother, who she believed was undermining her parental authority, rather than any founded concern about the grandmother's caretaking abilities or the child's well-being. The record amply supports Family Court's finding that "the grandmother was a critical component of the child's caregiver structure" from birth, throughout her formative years, and up until the commencement of this proceeding. In addition to being the child's primary caregiver for the first 17 months of her life, the grandmother frequently provided care for the child between the summers of 2015 and 2018, saw the child "[a]lmost every weekend" between November 2018 and January 2020, visited with the child on 296 days between January 2020 and December 2021, including for over a week-long period during the mother's 2021 hospitalization, and continued to spend a considerable amount of time with the child into 2022. The grandmother also has been involved in the child's schooling and extracurricular activities, and she provided [*4]financial assistance for the child. The grandmother elicited compelling testimony from third-party sources that the child appeared closely bonded with her when they were together, and that she was a safe and loving resource for the child. There was also testimony that the grandmother had made concerted efforts to comply with the mother's parenting directives, ensured that the child understood that the mother was the parental figure, and appropriately attempted to shield the child from the underlying court proceedings as well as the mother's animosity toward her.
By contrast, the mother and her husband had exposed the child to their animosity toward the grandmother. The child was previously closely bonded with the grandmother, expressing as recently as November 2023 that she loved and missed her. Family Court found that the abrupt change in her sentiment about continuing a relationship with the grandmother was, unfortunately, heavily influenced by the mother and her husband (see Matter of Layton v Grace, 129 AD3d 1147, 1149 [3d Dept 2015]; Matter of Stellone v Kelly, 45 AD3d at 1205). The mother proffered no reasonable basis for her objection to the child continuing to see the grandmother, failing to recognize the potential negative effects of severing their previously close relationship. "Although '[t]he presumption that a fit parent's decisions are in the child[ ]'s best interests is a strong one[,]' this does not mean that a parent enjoys a constitutionally guaranteed carte blanche veto as to grandparent visitation, particularly when based upon tenuous reasoning" and when, as here, the grandparent has played a substantial caretaking role in the child's life (Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1329 [3d Dept 2019], lv denied 34 NY3d 909 [2020], quoting Matter of Jones v Laubacker, 167 AD3d 1543, 1545 [4th Dept 2018]). In sum, Family Court issued a thorough and carefully balanced decision that appropriately weighed the mother's decision-making authority as a fit parent with the best interests of the child in maintaining a relationship with a grandparent who played a substantial role in her life. Notwithstanding the attorney for the child's position on this appeal, Family Court's determination has a sound and substantial basis in the record (see Matter of Donald UU. v Shirleen UU., 242 AD3d 1342, 1343 [3d Dept 2025]; Matter of Melissa X. v Javon Y., 200 AD3d at 1454; Matter of Stellone v Kelly, 45 AD3d at 1205).
The mother's argument that Family Court erred by making her solely responsible for facilitating transportation to the visits with the grandmother is similarly unavailing. The child currently lives in North Carolina and the order on appeal expressly provides — for calendar years beyond 2024 — that the grandmother "shall take on the obligation to travel to the child or provide transportation for the child" in the event she lives beyond 50 driving miles from the grandmother's residence and the mother is not willing or able to provide [*5]such transportation.FN4 That said, the attorney for the child on appeal revealed that the child has not seen the grandmother since November 2025, that the visit did not go well and that their relationship remains strained. Regardless of who bears the blame for that unfortunate reality, in these circumstances, we find it appropriate for the grandmother and the child to engage in therapeutic counseling to attempt to restore their relationship. Such therapeutic contact between the grandmother and the child may be held virtually and shall occur before progressing to the in-person visitation schedule set forth in the order on appeal. The mother must arrange for such therapeutic contact in consultation with the grandmother's schedule. However, the grandmother shall be financially responsible for the cost of such therapeutic contact. Such therapeutic contact between the grandmother and the child shall occur in private unless the therapist decides otherwise.
Aarons, Pritzker, McShan and Ryba, JJ., concur.
ORDERED that the order is modified, on the law and in the exercise of discretion, without costs, by imposing a six-month period of therapeutic contact between petitioner and the child to commence within 30 days of this decision and to occur before the visitation schedule set forth therein goes into effect; and, as so modified, affirmed.

Footnotes

Footnote 1
In her petition, the grandmother sought a visitation schedule that was consistent with the parties' January 2022 agreement. However, the schedule fashioned by Family Court was substantially more limited, amounting to a total of six days per year broken up into three separate visitation blocks if the child lived further than 50 driving miles from the grandmother's residence. At the time the briefs on appeal were filed with this Court, the child was living in North Carolina with the mother and the mother's husband.

Footnote 2
Although the grandmother filed a notice of appeal, her appellate brief advocates for affirmance of Family Court's order "in all respects," including the visitation schedule set forth therein. As the grandmother advances no argument in support of her cross-appeal, such appeal has been abandoned (see Matter of Christine X. v James Y., 244 AD3d 1545, 1546 n 1 [3d Dept 2025]).

Footnote 3
The attorney for the child argues that Family Court's determination lacks a sound and substantial basis in the record.

Footnote 4
In that circumstance, the order on appeal grants the grandmother two additional days of visitation.